421 A.2d 458

**COMMONWEALTH of Pennsylvania**

v.

**Raymond Joseph MORETTI, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1979.

Filed Sept. 23, 1980.

Petition for Allowance of Appeal Denied Dec. 31, 1980.

Bruce S. Miller, Hazleton, for appellant.

Richard B. Russell, District Attorney, Pottsville, for Commonwealth, appellee.

Before BROSKY, WICKERSHAM and EAGEN, JJ.*

WICKERSHAM, Judge:

On January 6, 1977, appellant, Raymond Joseph Moretti, was arrested on a complaint brought by Trooper Peter Zuber of the Pennsylvania State Police charging Moretti with possession of a controlled substance and possession with intent to deliver a controlled substance.[1] Specifically, Moretti was charged with possessing, having under his control and intending to deliver a controlled substance, to wit, approximately thirty pounds of marijuana, a Schedule I drug, not being registered or permitted or allowed to have in his possession such controlled substance.

* Chief Justice MICHAEL J. EAGEN of the Supreme Court of Pennsylvania, is sitting by designation.

1. The Controlled Substance, Drug, Device and Cosmetic Act, 1972, April 14, P.L. 233, No. 64, 35 P.S. § 780–101 (§ 780–113[a][16], [30]).

On January 4, 1978, a jury trial was held before the Honorable Donald D. Dolbin in the Court of Common Pleas of Schuylkill County with Bruce Miller, Esquire, representing the defendant. The jury returned a verdict of guilty as to both charges on January 6, 1978, following which a motion for new trial and in arrest of judgment was filed on behalf of the defendant and subsequently argued. Judge Dolbin, after hearing, denied the post–verdict motions and on August 21, 1978, sentenced the defendant to undergo imprisonment in the Schuylkill County Prison for a period of not less than one year nor more than three years. Notice of appeal was duly filed to the Superior Court of Pennsylvania by appellant's trial counsel who raises five issues before this court.[2]

2.     *"STATEMENT OF QUESTIONS*

"1) WHETHER THE LOWER COURT ERRED IN DENYING APPELLANT'S REQUEST FOR A COPY OF THE TRIAL TRANSCRIPT FOR USE IN PREPARATION AND ARGUMENT OF POST–TRIAL MOTIONS.

"2) WHETHER THE COMMONWEALTH ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE THAT THE AFFIDAVIT FOR AND EXECUTION OF THE SEARCH WARRANT WAS REASONABLE AND IN ACCORDANCE WITH THE RULES OF CRIMINAL PROCEDURE.

A.   WHETHER THE COMMONWEALTH FAILED TO ESTABLISH THAT THE POLICE GAVE THE REQUISITE ANNOUNCEMENT OF IDENTITY AND PURPOSE BEFORE APPELLANT OPENED HIS APARTMENT DOOR.

B.   WHETHER SEARCH WAS UNREASONABLE AND IN VIOLATION OF THE RULES OF CRIMINAL PROCEDURE AS THE POLICE GAINED ENTRY THROUGH SUBTERFUGE.

C.   WHETHER THE SEARCH WARRANT CONTAINED REASONABLE CAUSE TO JUSTIFY A NIGHTTIME INTRUSION SINCE NO UNDERLYING FACTUAL CIRCUMSTANCES WERE LISTED AND SINCE THE PARTICULAR AVERMENTS THEREOF WERE UNTRUE AND MISLEADING.

D.   WHETHER THE SEARCH WARRANT WAS SERVED IN ACCORDANCE WITH THE TIME LIMITATIONS INDICATED ON THE FACE OF SAID WARRANT.

"3) WHETHER THE COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR THE DISCLOSURE OF THE IDENTITY AND WHEREABOUTS OF THE COMMONWEALTH INFORMER.

"4) WHETHER COURT ERRED IN DENYING APPELLANT'S DEMURRER TO THE COMMONWEALTH'S EVIDENCE.

At trial, Trooper Peter Zuber testified on behalf of the Commonwealth that he was a member of Troop L Vice Squad of the Pennsylvania State Police assigned to investigate drug complaints in Schuylkill County and had eighteen years experience as a police officer and five years experience in Schuylkill County. He had conducted more than three hundred investigations. Shortly after midnight on January 6, 1977, he met with other members of the state police at the Frackville Barracks. From there they went to Magistrate Richards' office to obtain a search warrant for a premises located on South Kennedy Drive in McAdoo Borough, a second–floor apartment. He had information from a Pennsylvania State Trooper named Long that the address was the residency of appellant, Moretti. After announcing their presence, the door was opened and Trooper Zuber and other officers entered the apartment. The search warrant was read to Mr. Moretti and he was advised of his rights (*Miranda* Warnings).

In a closet in the kitchen of the appellant's apartment the officer found three bricks containing vegetable matter which he presumed to be marijuana along with other paraphernalia. The defendant, Moretti, told the police officer that he rented or leased the Dog House Restaurant downstairs and also leased the apartment where the search was conducted. Subsequent testing at the Pennsylvania State Police Crime Lab proved the seized material to be marijuana packaged in Kilo bricks weighing 2.2 pounds each. Commonwealth witnesses, experienced in drug investigations, testified that in their opinion no individual would have the amount of marijuana that was found in the apartment for one's own personal use but rather would be delivering the same, that is selling the same, to others. For example, Corporal Marinetti testified that on an average, one gram of marijuana would be used in making one cigarette. Further

"5) WHETHER THE VERDICT WAS AGAINST THE EVIDENCE AND THE WEIGHT OF THE EVIDENCE." (Appellant's Brief–Page 2)

that one could make between twenty to twenty–five cigarettes from an ounce of marijuana. (N.T. 71). Witness Marinetti further testified that the particular type of marijuana seized on January 6, 1977, in his opinion, was probably Columbian which was bringing $40 an ounce at the time. (N.T. 89). Witness Michael Horvath of the Pennsylvania State Police Crime Laboratory in Bethlehem testified that he had examined the material, declared it to be marijuana and identified various exhibits at trial. Exhibit 2, for instance, contained a total weight of marijuana of 5.475 kilograms and he testified that there is roughly 2.2 pounds to a kilogram.

## I.

Against the factual background set forth hereinbefore, the first intention we consider of the appellant is that he did not receive a copy of the trial transcript for use in preparation and argument of post–trial motions.

Rule 1123(a) of Pa.R.Crim.P. provides:

"Within ten (10) days after a finding of guilt, the defendant shall have the right to file written motions for a new trial and in arrest of judgment. Only those grounds may be considered which were raised in pre–trial proceedings or at trial, unless the trial judge, upon cause shown, allows otherwise. Argument shall be scheduled and heard promptly after such motions are filed, and only those issues raised and the grounds relied upon in the motions may be argued. If the grounds asserted do not require a transcript, neither the filing nor argument of post–verdict motions shall be delayed for lack of a transcript of the notes of testimony."

Obviously, it is a matter of trial court discretion as to whether or not a transcript is required of the notes of testimony prior to filing and argument of post–verdict motions.

Appellant suggests, however, that the Act of May 1, 1907, directs a contrary result. This statute relating to official stenographers and which was repealed by the Act of 1978, April 28, P.L. 202, No. 53, § 2a (899) effective June 27, 1980, provided as follows:

"The law judges of each of the several courts of oyer and terminer and general jail delivery, and of the courts of quarter sessions of the peace, shall employ the official stenographer or stenographers of the courts of common pleas of the particular county, to report the proceedings of the said court, whenever requested so to do by any defendant or defendants, or his, her or their counsel, before or during the trial of any case in any of said courts: Provided, further, That in all cases tried in the several courts of oyer and terminer and general jail delivery, if the request or requests for a copy of the notes of testimony are made within ninety (90) days from date of verdict, or at any time if in the discretion of the court such request should be granted, the defendant or defendants shall be furnished with a copy of the notes of testimony taken at his, her or their request, which said notes shall be paid for by the county in which said case is tried, except, however, that where the court finds that the defendant or defendants making the request are able to pay for the copies, the cost thereof shall be paid by such defendant or defendants and shall be taxed as costs and paid to the county." 1907, May 1, P.L. 135, § 2; 1911, May 5, P.L. 161, § 1; 1959, June 1, P.L. 340, § 1; 1960, Jan. 8, P.L. (1959) 2116, § 1, 17 P.S. § 1802.

We find nothing inconsistent between the Act of May 1, 1907, and Rule 1123(a) of Pa.R.Crim.P. The request of the defendant was a matter for the exercise of discretion by the trial court and there is no evidence of an abuse of such discretion. Furthermore, we note in passing that a trial transcript has since been prepared and was made available to the defendant for the purposes of taking this appeal and is part of the official record in this case.

## II.

The second argument advanced by the appellant relates to the search warrant. More particularly, whether the police gave a proper announcement of identity and purpose before appellant opened his apartment door, whether the police gained entry through subterfuge, whether a nighttime search was appropriate, and finally whether the search warrant was served in accordance with the time limitations indicated on the face of said warrant.

Judge Dolbin, in his Opinion of Court dated July 10, 1978 accurately summarizes the pertinent facts:

"On or about January 5, 1977, the Pennsylvania State Police received information from a confidential informant that the defendant had a quantity of marijuana at his residence in McAdoo, Pennsylvania, and that he was going to deliver most of the marijuana in the early morning of January 6, 1977. Trooper Edward G. Long of the Pennsylvania State Police, Regional One Strike Force, armed with the foregoing information went to the office of Magistrate Norman H. Richards at Hometown, Penna., and under oath, related the said information to Magistrate Richards, gave an affidavit, whereupon a search warrant issued to search the residence of the defendant in McAdoo. At approximately 4:00 A.M. on January 6, 1977, five officers of the Pennsylvania State Police proceeded to 119 South Kennedy Drive, McAdoo, Penna., the residence of the defendant, and executed the search warrant.

"A fair distillation of the Commonwealth's testimony discloses that two of the State Policemen attempted to make a buy from the defendant who requested verification from someone in Allentown, Penna. named "Kish". When this attempt proved unsuccessful, the police returned to the defendant's house whereupon the defendant came to the door and one of the police showed him a badge stating, "We are State Police! We have a search warrant." The defendant then opened the door stating, "I don't want any hassle", following which the search warrant was read to the defendant, he was advised as to his rights and a search of the premises ensued. Approximate-

ly thirty pounds of marijuana were found in the defendant's apartment and a set of scales for weighing substances. It was the testimony of Trooper Peter Zuber that the defendant stated that a young lady spending the evening with the defendant was not involved."

(Judge Donald D. Dolbin's Opinion of Court, Pages 1 and 2.)

The trial record clearly indicates that the investigating state police officers followed the mandate of Rules 2002 et seq. of Pa.R.Crim.P. relating to search warrants. They gave proper announcement of identity and purpose. Their nighttime search was authorized and had a reasonable basis. Further, our case is similar to *Commonwealth v. Regan*, 254 Pa.Super. 555, 386 A.2d 89 (1978) where we held at 254 Pa.Super. 559, 386 A.2d 89, "that police use of a ruse to initiate execution of a search warrant is permissible where it is followed by an announcement of authority and purpose and by peaceful entry."

### III.

Prior to trial the defendant requested the identity and whereabouts of the Commonwealth's informer. The lower court correctly held that the informant was not present at the time of the search and arrest when the marijuana was discovered and therefore could not be characterized as a material eyewitness to the crime. *Commonwealth v. Garcia*, 261 Pa.Super. 296, 396 A.2d 406 (1978).

### IV & V.

The remaining two questions concern whether the court erred in denying appellant's demurrer to the Commonwealth's evidence and whether the verdict was against the evidence and the weight of the evidence. We have examined closely the briefs and the record and find no merit in either contention.

Judgment of sentence is affirmed.