486 A.2d 1361

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Charles BONASORTE.**

Superior Court of Pennsylvania.

Argued May 7, 1984.

Filed Dec. 21, 1984.

334

336

Dara A. DeCourcy, Assistant District Attorney, Pittsburgh, for Commonwealth, appellant.

Norma Chase, Pittsburgh, for appellee.

Before SPAETH, President Judge, and CAVANAUGH, WIEAND, CIRILLO, MONTEMURO, POPOVICH and HOFFMAN, JJ.

MONTEMURO, Judge:

This is a Commonwealth appeal from the order of the Court of Common Pleas of Allegheny County granting the suppression motion of appellee, Charles Bonasorte.[1] The

1. Our independent review of the record discloses that if the suppression order is upheld, the prosecution will be terminated. The order is

Commonwealth asserts two instances of error by the court below: First, it argues that the court erred in ordering the suppression of evidence seized pursuant to a search on the basis of findings which were not supported by the record. Second, it argues that the court erred in ordering the production of a confidential informant *in camera* when the defendant had not first produced substantial proof of the affiant's deliberate misrepresentation, on the affidavit of probable cause in support of the application for the warrant, sufficient to overcome the Commonwealth's privilege to withhold the identity of the informant.

The facts relevant to the present appeal are as follows: On May 8, 1980, Detectives Barry Fox and Ron Parzich of the Narcotics Division of the Pittsburgh Bureau of Police applied for two warrants to search the premises at 4854 Second Avenue, and at 4856 Second Avenue in the City of Pittsburgh. The premises were a vacant warehouse, and a tavern, respectively.

The affidavit of probable cause, attested to by both Fox and Parzich, with respect to the application for a warrant to search 4854 Second Avenue, set forth the following facts:

The affiants have received information from a past reliable informant who states that within the period of time from 5–5–80 to the present this informant has been present in the Chasmar Tavern located at 4856 Second Ave and did observe several persons come into the bar and purchase several qualudes [sic] from Chuck Bonarsorte [sic] in the Bar, but it was noted by this informant that on one such occasion Chuck had been supplied with monies from an unidentified person, then Chuck went next door to the bldg. located at 4854 Second Ave and returned with a bag that contained at least 100 white tablets that from the markings the informant recognized to bebootleg [sic] qulaudes [sic], he returned the [sic] Chasmar and gave the bag to the person who had given the monies.

therefore appealable. *See Commonwealth v. Lapia,* 311 Pa.Super. 264, 457 A.2d 877 (1983).

338

This *informant* [sic] has supplied information in the past that lead [sic] to the arrests and convoct ions [sic] of John Marbella of 430 Flowers Ave on 8–24–79 also Lois Bartlebaugh of 425 St Clair St on 5–7–77 both arrests resulted in seizures of drugs.

The affiants have also received information from a seperate [sic] source who states that within the past 48 Hrs a transaction involving a large amount of bootleg ludes from Chuck Bonasorte to an unidentified person occured [sic] in the bar after Chuck had first gone next door to 4854 2nd. Ave sold an amount and placed the remainder over by the area to [sic] the basement.

The affidavit of probable cause in support of the second application set forth substantially the same facts. Based on these affidavits, warrants were issued for the search of both premises.

The warrants were executed immediately. Fox, Parzich and numerous other detectives participated in the search. In the basement of the vacant warehouse, the detectives discovered and seized a bag containing over four hundred white tablets later determined to be methaqualone.

The appellee was arrested and charged with one count of possession of a controlled substance,[2] and one count of possession with intent to deliver a controlled substance.[3]

On September 18, 1980, the appellee, through counsel, filed a motion to suppress physical evidence—i.e. the white tablets—seized during the search, and to suppress a statement made by the appellee in the basement of the warehouse immediately after seizure of the tablets. In that statement, the appellee allegedly admitted the tablets belonged to him.

The suppression hearing commenced on October 6, 1980, before the Honorable James R. McGregor. At the outset of the hearing, an amendment to the suppression motion was allowed raising a challenge to the search warrant based on

2. 35 P.S. § 780–113(a)(16).
3. 35 P.S. § 780–113(a)(30).

informant reliability.[4] Counsel for the appellee also stated that it was his intention to move for production of the confidential informant after the development of a factual basis to support the motion.

The Commonwealth went forward with the testimony of Detective Fox. On direct examination, Fox testified primarily about the actual circumstances of the search of the tavern and the warehouse. It is defense counsel's cross-examination of Detective Fox, however, that is more relevant to the present appeal.

The detective was questioned extensively about his relationship with the previously reliable confidential informant, whose information comprised the bulk of the affidavit of probable cause.[5] The questioning was directed toward the assertions in the affidavit whereby the affiants established the previous reliability of the informant—that is, the information given which had led to previous arrests and convictions.

Defense counsel was allowed a great deal of latitude in cross-examination, and through a process of "pyramiding",[6]

4. In actuality, the challenge to the informant's reliability was an assertion that the informant did not exist, and that the affiant to the search warrant misrepresented facts in the affidavit of probable cause as to the existence of the informant. (N.T. October 6, 1980, at 126). This challenge attacks the veracity of the affiant, and not the veracity of the informer. *Cf. Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *Commonwealth v. Bradshaw*, 290 Pa.Super. 162, 434 A.2d 181 (1981). We note further that the suppression judge allowed the amendment despite his belief the issue had been preserved by allegations in the suppression motion that the search warrant affidavit lacked probable cause.

5. At the risk of stating the obvious, examination of the affidavit of probable cause invariably leads to the conclusion that, absent the information provided by the "previously reliable" informant, there was no probable cause established, and no warrant would have issued.

6. The "pyramiding" process was done thusly: Examination of the affidavits of probable cause in the search warrant applications in the instant case stated that the confidential informant's reliability was established by the fact that he had given information which led to the arrest and conviction of John Marbella, and of Lois Bartlebaugh. Counsel then introduced search warrants which had been issued for premises occupied by Marbella and Bartlebaugh. In each of the warrants, the affidavit of probable cause relied on information sup-

it was shown that the same informant, whose information provided probable cause for the issuance of the search warrants herein, had given information in twenty-seven previous cases in which search warrants had been issued. In addition, Detective Fox revealed nine additional cases, outside the "pyramid", in which this informant's information was used to establish probable cause.

After establishing the number of previous arrests in which this particular informant had provided information which led to convictions, defense counsel demonstrated that the affidavits supporting applications for search warrants in those cases were possessed of a specific pattern of facts. The informant, accompanying an unnamed acquaintance, would go to the premises of a drug dealer and observe a drug transaction take place. The informant never participated in the transaction.

Additional facts were adduced during cross-examination of the detective:

> [T]he informant in question had never been arrested, had never been seen using, buying, possessing or dealing in drugs, had never asked for any favors from the police officers on behalf of himself or any other individuals in consideration for the information he volunteered; and further, that said informant had never received any remuneration for his information.

Lower Court Opinion, at 3. Moreover, the drug transactions took place in approximately sixteen different neighborhoods throughout the City of Pittsburgh, and one transaction took place in Las Vegas, Nevada.

Detective Fox concluded his testimony on October 28, 1980.[7] Upon resumption of the hearings, Detective Bernard

plied by a confidential informant whose reliability was established by giving information which led to the arrest and convictions of other persons, etc. Thus, this informant's activity was traced back to cases in which he had previously given information.

7. Detective Fox's testimony was extensive and was given over the course of five days—October 6, 7, 8, 27 and 28 of 1980. The suppression hearing resumed on December 10, 1980 and further testimony

Ciganek of the Pittsburgh Police was presented as a witness. Detective Ciganek testified that he did not think it was unusual for one informant to give information which led to arrests in many different areas in the city, because drug dealers often move around the city from neighborhood to neighborhood to avoid police pressure; drug users, including informants, tend to move to follow the source. He further testified that he had one informant who in the last ten years had given him information that had led to fifty arrests in all parts of the city. The remainder of Detective Ciganek's testimony related to his experience with informers in general and also his role in executing the search warrant in the present case.

The Commonwealth also presented the testimony of Detective Butler of the Pittsburgh Police, who also testified about his experience with informants and about his role in executing the search warrants in the present case. Testimony concerning the role of informants and personal experience with informants was also given by Investigator Ray Heagy of the Scott Township Police, Sergeant Earl Buford of the Pittsburgh Police, Agent Richard Sye of the Drug Enforcement Agency and Detective Anthony Ransley of the Allegheny County Police.

Finally, on December 22, 1980, the Commonwealth presented the testimony of Detective Ron Parzich, the co-affiant on the search warrant applications in this case. Detective Parzich added little, if any, material testimony by reason of his vague and sometimes reluctant answers. At the conclusion of Detective Parzich's testimony, both the Commonwealth and the defense rested. The suppression judge deferred his decision pending receipt of the transcribed notes of testimony.

On May 18, 1981, the suppression judge, in open court and on the record, ordered the Commonwealth to produce the confidential informant *in camera* within thirty days. The judge further stated that: "the Court is available to

was taken on December 11 and 12. The evidentiary hearings concluded on December 22, 1980.

meet with such person any hour of the day or night, seven days a week, in or out of Allegheny County within the continental United states." (N.T. May 18, 1981, at 2).

Thereafter, the Commonwealth petitioned the court to reconsider its production order on the grounds that compliance would: (1) endanger the life of the confidential informant; (2) diminish the continued usefulness of the confidential informant; and (3) impair police authorities in further dealings with this and other confidential informants.

On June 22, 1981, the date on which the original production order was to lapse, the Court heard testimony on the Commonwealth's petition. Stephen A. Joyce testified about informants who had been killed, and about the need for informants in aiding police work, especially in the investigation of narcotics violations. At the conclusion of the testimony, the court refused to reconsider its production order, but did grant the Commonwealth an additional thirty days to produce the informant. An additional extension was later granted, but the informant was not produced. The Commonwealth offered by way of explanation that the informant refused to appear.[8]

On September 2, 1981, the court, upon consideration of the testimony introduced by the Commonwealth, and the failure to produce the informant for an *in camera* interview, granted the appellee's motion to suppress. As was stated by the Court:

> The testimony of the Commonwealth's witnesses is so incredulous that it raises as [sic] a genuine issue of fact as to the existence of the informant. Accordingly, this Court requested that the informant be produced in camera or at any time or place of the Commonwealth's choosing, so that the identity of the informant would be protected, and so that the Court could verify the existence of the informant based on his responses to questions

8. This information was given to the court by the assistant district attorney, who was so informed by Detective Fox. Detective Fox never reappeared in court to testify as to the informant's reasons why he refused to be interviewed.

submitted by Counsel for the Commonwealth and Defendant.

Notwithstanding many continuances, solely for the purpose of locating the informant and making the necessary arrangements for his production for questioning by the Court, in camera, the Commonwealth failed to produce said informant, and, moreover, refused to do so.

Lower Court Opinion, at 3–4. The Commonwealth filed a timely appeal from the order of September 2, 1981.[9]

▮ In reviewing a lower court's order granting a motion to suppress, this court will apply the standard of review set forth by the supreme court in *Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137 (1983). "[W]here the Commonwealth is appealing the adverse decision of a suppression court, a reviewing court must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted." *Id.*, 503 Pa. at 216, 469 A.2d at 139. Moreover, it is for the suppression court as trier of fact to determine the credibility of witnesses. *Commonwealth v. Menginie*, 312 Pa.Super. 293, 458 A.2d 966 (1983); *Commonwealth v. Reynolds*, 300 Pa.Super. 143, 446 A.2d 270 (1982); *Commonwealth v. Butch*, 257 Pa.Super. 242, 390 A.2d 803 (1978).

9. In *Commonwealth v. Iannaccio*, 304 Pa.Super. 307, 450 A.2d 694 (1982), the Commonwealth appealed from the interlocutory order of the Court of Common Pleas of Allegheny County directing production of a confidential informant *in camera*. This court treated the appeal as being from an order suppressing evidence, and reversed the lower court. An evenly divided supreme court affirmed the order of this court. *Commonwealth v. Iannaccio*, 505 Pa. 414, 480 A.2d 966 (1984). Despite the fact that the supreme court affirmed, both the Opinion in Support of Affirmance (Zappala, J. joined by McDermott and Hutchinson, JJ.) and the Opinion in Support of Reversal (Larsen, J., joined by Flaherty, J.) agreed that the superior court improperly interpreted the procedural posture of the case. (Chief Justice Nix filed a separate Opinion in Support of Reversal). The supreme court noted that the Commonwealth appealed from a discovery order under Pa.R.Crim.P. 305 E. Despite the many similarities between *Iannaccio* and the present case, the record here makes it amply clear that this is a Commonwealth appeal from an adverse suppression order. Consequently, this case is governed by the standards of review normally utilized in a case of this genre.

Herein, the appellee offered no evidence, relying instead on extensive cross-examination of the search warrant affiants and other Commonwealth witnesses. The suppression court decided not to believe the Commonwealth witnesses.

■ We note that "[i]t is incontrovertible that, here in Pennsylvania, the Commonwealth and not defendant, has the initial burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of defendant's rights. Pa.R.Crim.P. 323(h)." *Commonwealth v. Ryan,* 296 Pa.Super. 222, 228, 442 A.2d 739, 742 (1982). The Commonwealth's burden is by a preponderance of the evidence. *Commonwealth v. Lawrence,* 311 Pa.Super. 326, 457 A.2d 909 (1983); *Commonwealth v. Eliff,* 300 Pa.Super. 423, 446 A.2d 927 (1982).

■ In *Commonwealth v. Hall,* 451 Pa. 201, 302 A.2d 342 (1973), the supreme court held that at a suppression hearing a defendant can challenge the veracity of facts establishing probable cause recited in an affidavit supporting a warrant, through cross-examination of the police officer-affiant, without any prior showing of the potential falsity of those facts. *See also, Commonwealth v. Iannaccio, supra.* (Opinion in Support of Affirmance, 505 Pa. at 421 n. 2, 480 A.2d at 969 n. 2); *Commonwealth v. Ryan, supra. But cf. Franks v. Delaware, supra.*

We perceive no defect in allowing the appellee to challenge the search warrant by cross-examination of the Commonwealth witnesses. The more difficult question is whether the suppression court's conclusion that the affiants included intentional misstatements in the affidavit of probable cause was correct. The question is difficult because the suppression court's conclusion was based on two grounds: (1) disbelief of the affiants; and (2) the failure to produce the informant *in camera.*

It is therefore evident that the two issues raised by the Commonwealth are inextricably interwoven, and that the discussion of the suppression issue must, of necessity, take

into consideration the question of whether the court erred in ordering the production of the informant.

■ Turning to the substantive law with respect to the challenged search, we first look to the prohibition against unreasonable searches and seizures set forth in U.S. CONST. Amend. 4[10] and Pa. CONST. ART. 1, § 8.[11] One fundamental concept gleaned from these constitutional provisions is that a warrant to search or arrest must be based on probable cause. In *Commonwealth v. Thomas*, 448 Pa. 42, 52, 292 A.2d 352, 357 (1972), the Pennsylvania Supreme Court stated that probable cause is present where "the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." In *Commonwealth v. Gray*, 322 Pa.Super. 37, 469 A.2d 169 (1983), we examined the common situation wherein probable cause for a search warrant is based on information received from a confidential informant. The *Gray* court reiterated the traditional standard for judging this information:

Where the affiant relies on information from a confidential informant, " 'the magistrate must be informed of some of the underlying circumstances from which [the] informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed ... was credible or his information reliable.' " *Commonwealth v.*

10. U.S. CONST. Amend. 4:
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

11. Pa. CONST. Art. 1, § 8:
 The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

*White,* [311] Pa.Super. [146], [150], 457 A.2d 537, 539 (1983) quoting *Aguilar v. Texas,* 378 U.S. 108, 114–115, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964). Accord: *Commonwealth v. Davis,* 466 Pa. 102, 110, 351 A.2d 642, 646 (1976); *Commonwealth v. Prosdocimo,* [308] Pa.Super. [187], [193], 454 A.2d 84, 87 (1982); *Commonwealth v. Turner,* 284 Pa.Super. 395, 398, 425 A.2d 1161, 1162 (1981).

*Id.* 322 Pa.Super. at 45, 469 A.2d at 172; and then went on to apply the modified test propounded in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983):

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a *fair probability* that contraband ... will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* 103 S.Ct. at 2332 quoting from *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960) (emphasis supplied).

*Gray, supra* 332 Pa.Super. at 46, 469 A.2d at 173–74. *Accord Commonwealth v. Rosario,* 320 Pa.Super. 215, 217, 467 A.2d 5, 6 (1983); *Commonwealth v. Price,* 318 Pa.Super. 240, 244, 464 A.2d 1320, 1323 (1983). The affidavits of probable cause herein are based primarily on information from a confidential informant. They are facially sufficient, and based on them, a magistrate issued warrants to search the warehouse and bar.

In Pennsylvania, however, at a suppression hearing, a defendant can go beyond the four corners of the search warrant and attack the affiant's veracity. *Commonwealth v. Hall, supra.* "Where a police officer makes a knowing misstatement of material fact in [an affidavit in support of an application for] a search warrant, the warrant is invalid and any evidence obtained pursuant to that war-

rant is inadmissible." *Commonwealth v. Minoske,* 295 Pa.Super. 192, 200, 441 A.2d 414, 418 (1982). *Accord Commonwealth v. D'Angelo,* 437 Pa. 331, 263 A.2d 441 (1970). Misstatements of fact will invalidate a search and require suppression only if they are deliberate and material. *Commonwealth v. Tucker,* 252 Pa.Super. 594, 599, 384 A.2d 938, 944 (1978).

The search warrants in the case *sub judice* relied primarily on the information provided by the confidential informant to establish probable cause. After hearing the testimony of the Commonwealth witnesses, and not finding it credible, the suppression court, doubting the existence of the informant, could have then ordered the evidence to be suppressed. Instead, after considering the evidence for almost five months, the court ordered the production of the informant *in camera,* essentially in our view to rehabilitate the testimony of the Commonwealth witnesses.

It is the Commonwealth's contention that the suppression court erred in ordering production of the informant because the appellee did not present "substantial proof of the affiant's deliberate misrepresentation, sufficient to overcome the Commonwealth's privilege to withhold the identity of the informant." Appellant's brief, at 28.

■ The question of whether a suppression court can order the production of a confidential informant *in camera* has been considered by both this court and our supreme court in *Commonwealth v. Iannaccio.* Our review of the opinions issued by the supreme court discloses that at least five justices agree that a request to produce a confidential informant is a discovery matter under Pa.R.Crim.P. 305 B; specifically, the court views the question as a discovery request in support of a motion to suppress. *Id.,* 505 Pa. at 423–424, 434, 480 A.2d at 970–71, 976.

The court has also reached a consensus that the issue is viewed under the rubric of discretionary discovery Pa.R. Crim.P. 305 B(2), which states:

Rule 305. Pretrial Discovery and Inspection.

\* \* \* \* \* \*

B. Disclosure by the Commonwealth.

\* \* \* \* \* \*

(2) *Discretionary with the Court:* In all court cases, except as otherwise provided in Rule 263 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

(a) the names and addresses of eyewitnesses;

(b) all written or recorded statements, and substantially verbatim oral statements of eyewitnesses the Commonwealth intends to call at trial;

(c) all written or recorded statements, and substantially verbatim oral statements, made by co-defendants, and by co-conspirators or accomplices, whether such individuals have been charged or not;

(d) any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its disclosure would be in the interests of justice.

However, it is at this point that agreement ends, and substantial disagreement begins as to which of the subsections of Pa.R.Crim.P. 305 B(2) is applicable herein, and more importantly, as to what showing a defendant must make before a suppression court may exercise its discretion in ordering production of an informant in derogation of the Commonwealth's "informer privilege."

Justice Zappala, joined by Justice McDermott and Justice Hutchinson would conclude that only Pa.R.Crim.P. 305 B(2)(d) is applicable in a situation, such as that herein,

where the informant is a "tipster" as opposed to a percipient witness.[12] Opinion in Support of Affirmance, 505 Pa. at 424, 480 A.2d at 971. The Opinion in Support of Affirmance also states:

> The only other section of Rule 305 B(2) arguably applicable here, the catch-all "any other evidence specifically identified by the defendant" contained in subsection (d), requires a showing that in addition to being material to the preparation of the defense and reasonable, the request be in the interests of justice. It is important to note that the Rule speaks in terms of a showing *by the defendant.* These conditions cannot be assumed, and they must be supported by the evidence on the record. It is in this context that the evidence presented at the hearing must be examined to determine whether the defendant met his burden (or more precisely whether the court abused its discretion in determining that he had).

*Id.,* 505 Pa. at 424, 480 A.2d at 971. Justice Zappala explained:

> [W]e require nothing more than that the moving party, who has the burden of proof, present evidence which would justify granting the relief requested. It must not be overlooked that policemen/affiants had probable cause at the time they applied for the search warrant. The Commonwealth, of course, carries the burden of proving that the facts presented to the magistrate demonstrate probable cause. The defendant, however, must carry the burden of proving his allegations that the information was not factual and that the affiants nevertheless deliberately presented it to the magistrate. Moreover, as was recently emphasized by the United States Supreme Court, "the task of a reviewing court is not to conduct a de novo

12. The appellant herein was charged with possession, and possession with intent to deliver, a controlled substance based on the white tablets found in the search by the narcotics detectives. The confidential informant was not present at the search and did not witness it. His information regarding the controlled substance was based on his perceptions approximately two days earlier.

determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton,* —— U.S. ——, 104 S.Ct. 2085, 2085–86, 80 L.Ed.2d 721 (1984) (per curiam) (emphasis added).

*Id.,* 505 Pa. at 426–427 n. 4, 480 A.2d at 972 n. 4.

On the other hand, the position advocated by Justice Larsen, joined by Justice Flaherty, would allow discovery under Pa.R.Crim.P. 305 B(2)(a) or (d). In effect this analysis would treat "tipster" informants as eyewitnesses. Opinion in Support of Reversal 505 Pa. at 434, 480 A.2d at 976. More importantly, this opinion takes a far different view on the showing that a defendant must make:

> The Opinion in Support of Affirmance holds that the appellant "failed to substantiate his offer of proof", and so, "could not have met his burden of showing that disclosure of the requested information was 'reasonable' and 'in the interests of justice', and, accordingly, was not entitled to have the informant produced. ... Only if [appellant] were able to first meet this burden would it be proper for the court to address the issue of the need for production of the informant." Slip opinion at 9. This ruling completely thwarts the salutary purposes and goals of our discovery rules and procedures which goals include exposing "any latent procedural or constitutional issues and affording remedies therefor prior to trial." Pa.R.Crim.Pro. 305 Comments, *quoting ABA Standards Relating to Discovery and Procedure Before Trial,* Sec. 1.1(a)(iv).

> Discovery procedures are designed to enable *both* the Commonwealth and the defendant to discover the evidence necessary to prove (or disprove) their respective positions on relevant trial and pre-trial issues. The Opinion in Support of Affirmance creates an insurmountable "catch" in the discovery process, however, by requiring the moving party to *first prove the issue before* that

party is entitled to disclosure of the information necessary to a full and fair resolution of the issue.

*Id.*, 505 Pa. at 439, 480 A.2d at 979.

The opinions of the supreme court conflict about whether a defendant must make a showing that disclosure is necessary; an issue crucial to the disposition of the present case. Both opinions advocate a position which finds substantial support in public policy.

In deciding what course to follow, we are guided by the basic precept that the Rules of Criminal Procedure are meant to express the intent of the supreme court, and must be interpreted in accordance with general rules of statutory construction Pa.R.Crim.P. 2. A basic rule of statutory construction is that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). The language of Pa.R.Crim.P. 305 B does not admit of any ambiguity.

▮▮▮ Consequently, we conclude the better course is to require a defendant seeking production of an informant to make a showing that production is material to the defense, and is reasonable. Moreover, we agree with the position of the Opinion in Support of Affirmance that production of an informant who is a mere "tipster" does not fall within Pa.R.Crim.P. 305 B(2)(a) because a "tipster" does not view the criminal episode upon which the actual charges are brought. This proposition is supported by past decisions of this court which held that a "tipster" is not an eyewitness. *Commonwealth v. Ryan*, 300 Pa.Super. 156, 446 A.2d 277 (1982); *Commonwealth v. Moretti*, 280 Pa.Super. 167, 421 A.2d 458 (1980). Therefore, a request for production of an informant is a discovery request under Pa.R.Crim.P. 305 B(2)(d). Discovery under this subsection requires a further showing that production is "in the interest of justice."

The question now is how to apply this analysis to the situation wherein there is a request for production of a confidential informant at a suppression hearing by a de-

fendant, which is countered by a claim of the Commonwealth's informer privilege.

█ Groundwork for this must be laid through discussion of the informer's privilege—that is, the government's privilege to preserve the confidentiality of their informants' identities. *See generally* Accused's Right To, and Prosecution's Privilege Against, Disclosure of Identity of Informer. 77 A.L.R.2d 762. It has been generally recognized that the privilege is necessary to protect the identity of informers who are recognized as a "vital part of society's defensive arsenal." *Schmid v. State,* 615 P.2d 565, 570 (Alaska, 1980), *State v. Burnett,* 42 N.J. 377, 201 A.2d 39 (1964). Protecting the identity of informants is recognized as a vital public interest because it is necessary to protect the flow of information from informants as well as to insure the safety of informants. The privilege was first discussed extensively in the seminal case of *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). In *Roviaro,* the Supreme Court considered whether disclosure of an informant's identity is ever required where a defendant makes a claim that the informant can offer evidence material to the defense, at trial. In a decision based not on constitutional grounds, but on its inherent supervisory power over the federal courts, the Supreme Court propounded a balancing analysis to determine when disclosure is appropriate. As the Court stated:

A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action.

\* \* \* \* \* \*

We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing

the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. (Footnotes omitted).

*Id.* at 61–62, 77 S.Ct. at 628–29. Under *Roviaro*, a defendant must demonstrate that disclosure is "essential to a fair determination."

The *Roviaro* balancing test gained acceptance in this Commonwealth in *Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284 (1967), and it has been applied consistently in subsequent cases. *Commonwealth v. Herron*, 475 Pa. 461, 380 A.2d 1228 (1977); *Commonwealth v. Washington*, 463 Pa. 206, 344 A.2d 496 (1975); *Commonwealth v. Pritchett*, 225 Pa.Super. 401, 312 A.2d 434 (1973). In each of these cases disclosure of the informant's identity was sought so that the informant could offer evidence relevant to the guilt or innocence of the accused at trial; that is, evidence relevant to a defense such as mistaken identity, entrapment or consent.

However, the *Roviaro* balancing test has also been utilized in determining the propriety of disclosure in pre-trial proceedings such as the one herein. *See Commonwealth v. Iannaccio, supra* (Opinion in Support of Reversal by Larsen, J.); *Commonwealth v. Fox*, 267 Pa.Super. 341, 406 A.2d 1072 (1979); *Commonwealth v. Garcia*, 261 Pa.Super. 296, 396 A.2d 406 (1978); *Commonwealth v. McGinn*, 251 Pa.Super. 170, 380 A.2d 431 (1977); *Commonwealth v. Williams*, 236 Pa.Super. 184, 345 A.2d 267 (1975).[13]

13. In *Fox, McGinn* and *Williams,* the court foresaw the need of formulating a statement of the defendant's threshold showing. The required showing was expressed variously as: "some showing that revelation is necessary." *Commonwealth v. McGinn, supra* 251 Pa.Super. at 173, 380 A.2d at 433, "substantial interest in disclosure." *Commonwealth v. Fox, supra* 267 Pa.Super. at 349, 406 A.2d at 1076; and in *Commonwealth v. Williams, supra,* this court found that a mere

■ The essence of *Roviaro* is that a court confronted with a request for disclosure of an informant's identity must balance the defendant's need against the public interest. *Roviaro*, however, is more specifically adapted to trial situations in that it balances the defendant's need for the informant's testimony *at trial* against the public interest. *See McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). In fact, many jurisdictions will employ *Roviaro*, and order disclosure of an informant's identity, only where guilt or innocence is in issue. E.g. *Laque v. State*, 627 S.W.2d 781 (1982 Texas App. San Antonio); *State v. Mertens*, 268 N.W.2d 446 (N.D.1978); *State v. Ramirez*, 95 N.M. 202, 619 P.2d 1246 (1980); *State v. Knox*, 4 Kan. App.2d 87, 603 P.2d 199 (1979). Thus, in applying *Roviaro* to the pre-trial suppression proceedings, we believe that some adaptation is required in order to take into consideration the different interests at stake. The defendant's threshold showing required by *Roviaro*—that disclosure is essential to a fair determination—must also be adapted to reflect these policy considerations.

In addition to the fact that *Roviaro* was originally designed for application at trial, and not for pre-trial proceedings, and to aid in deciding guilt or innocence, and not the presence or absence of probable cause, there are additional considerations. We must not ignore both the defendant's and the public's interest in preventing violations of the Fourth Amendment, which occur when police officer affiants willfully include misstatements of fact in an affidavit of probable cause. On the other hand, we are not required "to assume the arresting [or attesting] officers are committing perjury." *McCray v. Illinois, supra* 386 U.S. at 313, 87 S.Ct. at 1063. Finally, it must be remembered that at a suppression hearing, where a defendant attacks the veraci-

assertion that the informant did not exist was not enough to require *in camera* production. We note that these cases were not decided within the framework of the discovery rules, Pa.R.Crim.P. 305. We further note that because of the variegated expressions of the threshold requirement, we are convinced that a uniform standard should be promulgated.

ty of a police officer-affiant he is attacking the credibility determination that had been made previously; albeit that such determination was an *ex parte* one.

However, we believe these considerations can be applied and that a proper threshold standard can be formulated which will reflect the different procedural and substantive aspects of a pre-trial suppression proceeding. Consequently, we hold that a defendant seeking production of a confidential informant at a suppression hearing must show that production is material to his defense, reasonable, and in the interest of justice. By this we mean that the defendant must demonstrate some good faith basis in fact to believe that a police officer-affiant willfully has included misstatements of facts in an affidavit of probable cause which misrepresents either the existence of the informant or the information conveyed by the informant; that without the informant's information there would not have been probable cause; and that production of the informant is the only way in which the defendant can substantiate his claim.

After such a showing is made by the defendant, it shall be within the discretion of the court as to whether or not to order the production of the informant. Pa.R.Crim.P. 305 B(2). *Commonwealth v. Rodgers*, 500 Pa. 405, 456 A.2d 1352 (1983); *Commonwealth v. Thiel*, 323 Pa.Super. 92, 470 A.2d 145 (1983); *Commonwealth v. Rineer*, 310 Pa.Super. 241, 456 A.2d 591 (1983). In exercising its discretion, the court shall weigh the proof offered by the defendant against the government's privilege to withhold the identity of the informant. *Cf. People v. Nunez*, 658 P.2d 879 (Colo.1983), *cert. dismissed*, 465 U.S. 324, 104 S.Ct. 1257, 79 L.Ed.2d 338 (1984). *People v. Martinez*, 658 P.2d 260 (Colo.1983); *People v. Darden*, 34 N.Y.2d 177, 356 N.Y.S.2d 582, 313 N.E.2d 49 (1974).

We further admonish the courts in exercising such discretion that there may indeed be a very real possibility of danger to the informant. Consequently, an order for production should take this possibility into consideration and

efforts such as *in camera* hearings should be made to insure the continued confidentiality of the informant's identity. We encourage suppression courts to be creative in drafting these orders and to take any reasonable measure they deem necessary if they believe an informant's life or safety is threatened. *See generally,* 1 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.3 (1978).

Of course, if the only "evidence" produced at the suppression hearing is a defendant's bald assertion (e.g., that the informant does not exist or that the affiant misrepresented information conveyed by informant), then the defendant has failed to meet his threshold burden. In such a situation, since the evidence is clearly insufficient, the suppression court has no reason, or need, to balance the evidence before it against the government's privilege. *Commonwealth v. Williams, supra.* Likewise, if the evidence before the suppression court persuades it that in fact no informant ever existed, or that the affiant misrepresented information supplied by an informant, it is not necessary to balance the evidence against the privilege; the evidence before the court is so conclusive that production of the informant would serve no purpose. In either case, the hearing court has already been persuaded by the record before it. Thus, the exercise of the suppression court's discretion will not be necessary unless the evidence produced at the hearing, though not conclusive, presents a factual basis supporting defendant's contention.

As to the disposition of the present appeal, we find no abuse of discretion. A factual record was before the suppression court which demonstrated a basis upon which the court could have found misrepresentations were present in the affidavit of probable cause regarding the source of the information stated therein. The information was essential to a finding of probable cause, and there was no other way for the defendant to substantiate a negative—i.e. the non-existence of the informant—other than to request his production. Finally, we note that the suppression court

took measures to insure the confidentiality of the identity of the informant. Thus, the production order was issued properly as a matter within the court's discretion.

Consequently, we find no error in the court's order suppressing the fruits of the search.[14] The court's findings were supported by the record and we will not disturb them on appeal.

Order affirmed.

CIRILLO, J., filed concurring opinion.

WIEAND, J., joined concurring opinion.

POPOVICH, J., noted dissent.

CIRILLO, Judge, concurring:

I agree with the decision upholding the trial court's suppression of evidence upon failure of the Commonwealth to produce a confidential informant in camera. However, I wish to call attention to the distinction between an order to produce a confidential informant in camera, and an order to disclose the informant's identity to the defendant.

An in camera hearing protects the confidentiality and safety of the informant to the greatest degree practicable while still providing a means of verifying police allegations that they relied on an informant's information to establish probable cause for a search or arrest. The in camera procedure is in effect a neutral course between complete confidentiality and full disclosure that in most cases would render it unnecessary to sacrifice either the government's informer privilege or the defendant's rights on the scales of a "balancing test."

The New York Court of Appeals instituted and described a regular in camera hearing procedure for that State in

14. The Commonwealth raises a question as to the scope of the suppression court's order: Whether the court suppressed only the white tablets, or also the statement by appellee. Although not specifically addressed in the opinion of the court below, we believe that the statement was suppressed, and that suppression was proper. *See Commonwealth v. Johnson*, 474 Pa. 512, 379 A.2d 72 (1977).

*People v. Darden,* 34 N.Y.2d 177, 181, 313 N.E.2d 49, 52, 356 N.Y.S.2d 582, 585–86 (1974); while upholding an order affirming a refusal to disclose an informant's identity, the Court said:

> In any event the court regards it as fair and wise, in a case such as this, where there is insufficient evidence to establish probable cause apart from the testimony of the arresting officer as to communications received from an informer, when the issue of identity of the informer is raised at the suppression hearing, for the suppression Judge then to conduct an *in camera* inquiry. The prosecution should be required to make the informer available for interrogation before the Judge. The prosecutor may be present but not the defendant or his counsel. Opportunity should be afforded counsel for defendant to submit in writing any questions which he may desire the Judge to put to the informer. The Judge should take testimony, with recognition of the special need for protection of the interests of the absent defendant, and make a summary report as to the existence of the informer and with respect to the communications made by the informer to the police to which the police testify. That report should be made available to the defendant and to the People, and the transcript of testimony should be sealed to be available to the appellate courts if the occasion arises. At all stages of the procedure, of course, every reasonable precaution should be taken to assure that the anonymity of the informer is protected to the maximum degree possible.

The Court of Appeals also demonstrated the advantage of the in camera procedure over a rule requiring outright disclosure:

> The weighty considerations countervailing against disclosure of the identity of police informers are evident— "the furtherance and protection of the public interest in effective law enforcement" (*Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639). Assuring the desirable flow of useful information to the police

will, of course, depend on predictable and reliable assurances that anonymity of informers will be preserved. The question as to when and in what manner, if at all, identity of the informer and verification of his communication should be established calls for a sensitive and wise balancing of the rights of the individual defendant and the interests of the public. Such a procedure as we have described would be designed to protect against the contingency, of legitimate concern to a defendant, that the informer might have been wholly imaginary and the communication from him entirely fabricated. At the same time the legitimate interests of the police in preserving the anonymity of the informer would be respected.

*Id.* at 181–82, 313 N.E.2d 49, 356 N.Y.S.2d at 586.

In *Commonwealth v. Miller*, 334 Pa.Super. 374, 483 A.2d 498 (1984), a panel of this Court followed the lead set in the *Darden* case. At issue was an order requiring a Commonwealth witness at a suppression hearing to answer questions tending to reveal the identity of a confidential informant whose information allegedly provided probable cause for a search of the defendant's home. Finding that disclosure of the informant's identity would jeopardize his safety, we reversed the order requiring disclosure. We pointed out that

the most persuasive case for disclosure is where the examination of the informant is necessary to vindicate a defense on the merits and where the withholding of the information will thereby compromise the truth finding function of the trial. Conversely, . . . the need for disclosure is far less compelling when it is sought in connection with pre-trial issues, such as the propriety of search or seizure, which do not bear upon the ultimate question of guilt or innocence.

*Miller*, 334 Pa.Superior Ct. at 385–386, 383 A.2d at 503 (quoting *United States v. Manley*, 632 F.2d 978, 985 (2d Cir.1980), *cert. denied sub nom. Williams v. United States*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981)). *See also People v. Goggins*, 34 N.Y.2d 163, 313 N.E.2d 41, 356 N.Y.S.2d 571,

*cert. denied,* 419 U.S. 1012, 95 S.Ct. 332, 42 L.Ed.2d 286 (1974).

We further held, however, that on remand the suppression court could conduct a *Darden*-type hearing to insure the legitimacy of police reliance on the informant for probable cause.

As *Miller* illustrates, in camera production of an informant will often be appropriate where disclosure to the defendant manifestly would not be. This brings me to my points of agreement and disagreement with the majority opinion. I endorse the majority's position insofar as it is on common ground with *Miller.* Both decisions establish that it is within the discretion of the suppression judge whether to order the confidential informant produced so that his existence or the reliability or content of his communications to the police may be verified. Clearly a judge should have discretion to say whether the informant's testimony is necessary, *see State v. Luciow,* 308 Minn. 6, 240 N.W.2d 833 (1976); *State v. Burnett,* 42 N.J. 377, 201 A.2d 39 (1964); *People v. Huggins,* 36 N.Y.2d 827, 331 N.E.2d 684, 370 N.Y.S.2d 904 (1975) (*Darden* proceeding discretionary); *State v. Cofone,* 112 R.I. 760, 315 A.2d 752 (1974); *but cf. Schmid v. State,* 615 P.2d 565 (Alk.1980) (in camera hearing mandated by procedural rule when search based on information obtained from confidential informant is challenged); moreover, the majority's formulation of a threshold showing of misrepresentation by the police provides a useful standard to guide the courts in exercising their discretion.

However, I part ways with the majority in that I would vest *less* discretion in the court as to what *type* of production to order; in the probable cause context, I would mandate that the in camera proceeding be used in lieu of open-court disclosure unless the interests of justice clearly required otherwise. Where there are substantial allegations that disclosure would endanger an informant, compromise his usefulness, or impair ongoing police investigations, and there are no compelling reasons why the defendant should have access to the informant's identity, then open-

court disclosure should not even be considered as an alternative.

Of course,

> The in camera hearing should not be viewed as a substitute for disclosure in all cases, for we rely upon an adversarial system of justice, and an ex parte proceeding can never supply the full equivalent of independent research and direct confrontation by the accused. However, in proper cases, such a hearing can avoid an otherwise irreconcilable conflict between the legitimate need for informant anonymity and the right of the defendant to be free of unfounded infringements of his privacy and liberty.

*People v. Dailey,* 639 P.2d 1068, 1077 n. 11 (Colo.1982).

Under the current state of Pennsylvania law, courts will have to deal with the contention that in camera hearings deprive the defendant of his right to pursue an attack on probable cause through vigorous cross-examination, a right recognized by our Supreme Court in *Commonwealth v. Hall,* 451 Pa. 201, 302 A.2d 342 (1973). However, neither *Hall* nor any other case in this jurisdiction guarantees a right to confrontation of the informant. *See Miller; Commonwealth v. Fox,* 267 Pa.Super. 341, 406 A.2d 1072 (1979); *see also Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *Colorado v. Nunez,* 465 U.S. 324, 104 S.Ct. 1257, 79 L.Ed.2d 338 (1984) (White, J., concurring in dismissal of certiorari). *Cf. Commonwealth v. Bradshaw,* 290 Pa.Super. 162, 434 A.2d 181 (1981) (credibility of affiant, not informant, is issue of probable cause hearing); *but cf. People v. Nunez,* 658 P.2d 879 (Colo.1983), *cert. dismissed, Colorado v. Nunez, supra.*

Ordinarily, in camera interrogation of the police informant by an impartial finder of fact, under the conditions prescribed in *Darden, supra,* will be an adequate method to test the truth of probable cause allegations. On those

infrequent occasions when open-court disclosure is imperative to allow for more probing cross-examination, a proceeding in camera in the first instance will put the court in a better position to make that determination.

The Commonwealth's objection to in camera proceedings is that even they threaten the interests protected by the informer privilege. I find this objection for the most part unpersuasive. The prospect of having to meet in camera with a judge is unlikely in any given case to deter an informant from cooperating with the police. The informant's role may be characterized as fairly dangerous in any event, and in camera hearings conducted with the proper circumspection will add little to the risks inherent in the informer's enterprise. Indeed, institution of a regular practice of proceeding in camera will help to foster the expectation among informants that their identities will be shielded from the view of those informed upon.

I have little difficulty concluding that in this case Judge McGregor's decision to order an in camera hearing was justified. The Commonwealth's dark intimations of danger to its informant are completely without merit; Judge McGregor expressed his readiness to take extraordinary precautions for the informant's protection, and yet the Commonwealth refused to produce him. The defendant contended that in fact no informant existed, and raised no objection to the in camera procedure. Moreover, the defendant established doubt about the informant's existence sufficient to warrant an in camera hearing. *Cf. Commonwealth v. Iannaccio,* 304 Pa.Super. 307, 450 A.2d 694 (1982), *aff'd by an equally divided court,* 505 Pa. 414, 480 A.2d 966 (1984); *Commonwealth v. Williams,* 236 Pa.Super. 184, 345 A.2d 267 (1975).

Therefore, I concur in the majority's judgment of affirmance.

WIEAND, J., joins.