## Commonwealth v. Camera

*William Panella, district attorney,* for the Commonwealth.

*David H. Acker,* for defendant.

McCRACKEN, *P.J.,* January 14, 1993—The defendant was charged with unlawful possession of cocaine, marijuana, and drug paraphernalia on the basis of a search of his residence conducted by the police on Sep-

tember 20, 1991. He filed a pre-trial motion to suppress the evidence obtained by that search on the grounds that the search was unlawful. That motion was denied on July 15, 1992, by a judge of this court without an opinion. (At a hearing held the previous day, the Commonwealth had presented the testimony of one of the officers who had conducted the search who testified as to what evidence had been obtained, but not as to the manner in which the police had obtained probable cause for a search warrant.) The case was called for trial on August 26, 1992, and, after counsel for both sides agreed to a stipulation of facts, the jury was directed to find the defendant guilty on all charges. On September 4, 1992, the defendant filed a motion in arrest of judgment, in which the only issue is the legality of the search.

A preliminary question that should be addressed is whether a trial judge is permitted to overrule the decision of another judge of the same court on a question of law in the same case. In civil cases, this is generally not permitted. *Lipchik v. Erie County,* 126 Pa. Commw. 347, 559 A.2d 988 (1989). But in the present context, that of post-trial motions in a criminal case, the question is answered by turning to Pa.R.Crim.P. 1123(e) which provides: "The trial judge shall determine whether post-verdict motions shall be argued before himself alone or before a panel sitting as a court en banc. Whenever the trial judge hears the motions alone, he may make any rulings that could be made by a court en banc." This provision, according to the official comment, gives an individual judge the power to sit as a court en banc to hear post-verdict motions, in which capacity he has all the jurisdiction of such a court, including the authority to reverse the prior ruling of a single judge as provided in *Commonwealth v. Bonser,* 215 Pa. Super. 452, 258 A.2d 675 (1969). (Prior to the adoption of Rule 1123(e), a trial judge had this power only when new evidence had emerged at the

trial.)[1] It therefore follows that a trial judge ruling on a motion in arrest of judgment may review independently the ruling of a pre-trial judge on a suppression motion and reverse it if erroneous.

The search warrant was issued by a district justice on September 19, 1991. The affidavit of probable cause was executed by Officer Matthew Seamans of the Neshannock Township Police who is also a member of the Lawrence County Drug Task Force. It is, of course, axiomatic that the district justice, in accordance with Pa.R.Crim.P. 119, was restricted to the information included in the affidavit in determining probable cause and that a reviewing court is similarly restricted in accordance with *Commonwealth v. Jones,* 506 Pa. 262, 484 A.2d 1383 (1984) and *Commonwealth v. Stamps,* 493 Pa. 530, 427 A.2d 141 (1981). We will therefore examine the contents of the affidavit, bearing in mind that probable cause is to be determined by a common sense interpretation of the facts stated in the affidavit without resort to the technicalities of pleading. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

The affidavit states that Officer Seamans received information from Agent C. C. Parker of the Office of the Attorney General, Bureau of Narcotics Investigation and Drug Control Region 6 Office in Zelienople regarding an anonymous telephone call received at his office that Fred Camera, residing at 105 West Clen-Moore Boulevard, Neshannock Township, Lawrence County, who operates a pet grooming shop on the premises, is also a user and trafficker in both cocaine and marijuana. At approximately 9:20 p.m. on September 19, 1991, Agent Parker proceeded with Superintendent Robert Shaffer of the Neshannock Township Police to the Camera residence where they removed approximately two bags and one can of abandoned refuse. An inventory of this refuse revealed a square piece

---

1. *Commonwealth v. DeMichel,* 442 Pa. 553, 277 A.2d 159 (1971).

of paper which the two men recognized as being consistent with the packaging of cocaine. There was also a white powder residue which tested positive for the presence of cocaine. Another piece of paper and a small plastic bag were also discovered. They were recognized as being of a type used for the repackaging of cocaine. The officers with their training and experience were aware that controlled substances kept within a residence can often be disposed of within a very short period of time and are often distributed during the night. They therefore asked for a nighttime warrant so as not to lose the fruits of the crime.

The initial consideration is whether the search of the garbage containers on September 19, 1991, as described in the affidavit was lawful. We find that it was. In *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988) the Supreme Court of the United States held that the act of leaving garbage outside a building for collection constitutes an abandonment of any property interest in it, and a relinquishing of any expectation of privacy, and therefore the search or seizure of the garbage by law enforcement officials raises no Fourth Amendment issue. In the same way, in *Commonwealth v. Minton,* 288 Pa. Super. 381, 432 A.2d 212 (1981) a search of a garbage bag and the seizure of the items it contained were upheld as violating no privacy interest.

Defendant emphasized the fact that, according to the affidavit, the officers seized not only the garbage but also the containers it was in. But it is equally clear that it was not the garbage containers, but rather the garbage itself, that aroused the suspicions of the officers and gave them probable cause to attempt a further search of the defendant's property. What caused the police to seek a search warrant was not any characteristic of a garbage can or a garbage bag that may have been

seized, but the nature of the materials inside these containers that were recognized to be possible drug paraphernalia. Accordingly, even if we assume for the sake of argument that the seizure of the garbage containers (as opposed to the garbage itself) was unlawful, it did not result in the uncovering of any incriminating evidence, because the evidence that was used to furnish probable cause for the subsequent search came only from the items of garbage inside the containers, a seizure that was lawful under *Greenwood* and *Minton, supra.*

Having determined that the initial seizure of the garbage on September 19, 1991, was lawful, we next consider the search of the defendant's house the following day. According to the affidavit, the materials found among the garbage, known by the officers to be consistent with the use and distribution of illegal drugs, served to confirm their suspicions based on the telephone tip received at the attorney general's office regarding illegal drug activities at the defendant's home. These suspicions became even stronger when the residue found on the paper among the garbage tested positive for cocaine. All these factors together added up to a reasonable belief that illegal drugs could be found in the house. Facts which put together show that items connected with criminal activity will be found in the place to be searched constitute probable cause by definition. *Commonwealth v. Council,* 491 Pa. 434, 421 A.2d 623 (1980). Furthermore, independent corroboration of an informant's tip may serve to establish probable cause even when the tip by itself would not suffice. *Commonwealth v. McCord,* 347 Pa. Super. 636, 501 A.2d 256 (1985).

The only question remaining is whether sufficient probable cause was shown for a nighttime search in accordance with *Jones v. United States,* 357 U.S. 493,

78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). The affidavit states that the officers knew from their experience "that controlled substances which are being held/stored within a residence can often be disposed of within a very short period of time and ... that controlled substances are often trafficked during the nighttime hours." Accordingly, a warrant for a search at night was sought so that the evidence could be obtained while it was still on the premises.

Nighttime searches are permitted when the affidavit indicates that there is a danger that the evidence will be disposed of before morning as is frequently the case with searches of the homes of suspected drug dealers. *Commonwealth v. Moretti,* 280 Pa. Super. 167, 421 A.2d 458 (1980); *Commonwealth v. Prokopchak,* 279 Pa. Super. 284, 420 A.2d 1335 (1980); *Commonwealth v. Baldwin,* 253 Pa. Super. 1, 384 A.2d 945 (1978). However, even if this information in the affidavit were not enough to permit a night search, our courts have held that a violation of this rule does not per se require suppression of evidence unless the defendant's rights have otherwise been violated. *Commonwealth v. Mourar,* 332 Pa. Super. 258, 481 A.2d 352 (1984); *Commonwealth v. Johnson,* 315 Pa. Super. 579, 462 A.2d 743 (1983).

For all the foregoing reasons we reach the conclusion that the motion to suppress evidence was properly denied.

### ORDER

Now, January 14, 1993, the defendant's motion in arrest of judgment is hereby denied. The defendant will be scheduled for sentence and the Adult Probation Office will conduct a pre-sentence investigation. Sentencing of defendant is hereby scheduled for March 4, 1993, at 9:30 o'clock before President Judge Glenn McCracken, Jr.