# Commonwealth v. Cleland

C.P. of Carbon County, nos. 208 CR 03, 209 CR 03.

*Michael S. Greek, assistant district attorney,* for Commonwealth.
*Brian B. Gazo,* for defendant Cleland.
*Stephen P. Vlossak Sr.,* for defendant Whah.

NANOVIC, *J.,* April 29, 2004—

## FACTUAL BACKGROUND

On February 25, 2003, at approximately 3:37 a.m., a surveillance camera at Boyer's Supermarket in Lansford, Carbon County, Pennsylvania, recorded the theft of the store's portable safe from the manager's office near the front entrance of the store. A tall, thin, white male, between six foot one inch and six foot three inches in height, can be observed on the film entering the store, side-stepping an interior front floor mat, turning left, walking a short distance, and then passing through two separate spring-hinged half doors—the first leading to an express checkout counter and the second from the checkout counter into the manager's office—removing the safe from beneath the office's counter and then lifting the safe and running out the front door. This area near the front of the store has been described as an open booth divided into two sections: the front portion is the express checkout and service counter; the rear portion—separated from the front section by a swinging-gated half-door—is the manager's office where the safe was located beneath the counter. (Preliminary hearing, pp. 7-9, 21, 36-37.)

At the time of the theft, the store was open to the public for business. The theft, however, was not immediately detected. By side-stepping the front mat, the intruder bypassed the activation of a buzzer which would otherwise signal the entrance of a customer into the store. When the theft was discovered several hours later, and the tape viewed by the police, the police also noted that the man who entered was wearing an undersized light-colored hooded sweatshirt, tight fitting blue jeans with a straight-leg cut, and cowboy boots. Additionally, based upon the person's apparent knowledge of the store—as evidenced by the perpetrator's avoiding detection in side-stepping the front mat and knowing the location of the safe, that it was portable and unsecured to the premises, and that it could be removed and carried by one person—the police suspected that the intruder was someone familiar with the store or knew someone familiar with the store. While interviewing store employees, the police learned that a former employee, Stacey Conrad, dated a person—now known as the defendant, John Cleland—fitting the general description of the person on the videotape. Police attempts to reach Ms. Conrad were unsuccessful and she could not be located.

That same day, the police began viewing store security tapes from previous dates. One tape, that of February 10, 2003, depicted John Cleland in the store with Conrad at approximately 3 a.m. In this tape, Cleland fit the same description apparent from the tape of the crime: he was a white male of approximately six foot three inches in height, was of slender build, had long thin legs, and wore straight legged jeans and cowboy boots. In the tape of February 10, 2003, Conrad was wearing a gray hooded sweatshirt which was the same or similar to that worn by the intruder and which appeared too large for her.

On February 27, 2003, the police responded to a domestic disturbance at Conrad's mother's home in Lansford. Conrad, who was then unemployed and in the company of Cleland, had given her mother $200 in cash. Cleland's dress again was the same as that of the person on the February 25 tape. Believing Cleland to be the person in that tape, the police arrested and charged Cleland with the theft from Boyer's. A search incident to Cleland's arrest revealed an additional $258 on his person. (Suppression hearing, p. 38.) Cleland told the police he had left home that evening with $1,000 in cash. He also claimed that the money came from the sale of his truck several days earlier; however, the buyer identified by Cleland denied having purchased the truck or giving him money. At this same time, Conrad was arrested for driving under the influence and placed in prison.

When later interviewed in prison, Conrad told the police that she was present during several conversations where Cleland and the defendant, Michael Whah, discussed stealing money from Boyer's. At the time of the theft, Conrad was residing in Whah's home in Drums, Pennsylvania, with Cleland; Whah was also living in the home with his girlfriend. Conrad also stated that on February 25, 2003, both defendants left Whah's home together, at approximately 2:45 a.m. and returned at 5 a.m., and that Cleland was then wearing a gray hooded sweatshirt, blue jeans and brown boots. She further stated that while eating breakfast with the two following their return, Whah told Cleland that the money was in Whah's room. During this same interview, Conrad identified the location within Whah's home where the tools used to open the safe were kept.

Conrad also told the police that she had advised Cleland how to bypass the front alarm; that Whah had stated he needed money to pay for his home; and that earlier that day Whah and Cleland had discussed driving to Boyer's to steal money. At some time later, Conrad admitted that she, in fact, was with the defendants when they drove from Drums to Boyer's on February 25, 2003; that Whah was the driver and parked his SUV in front of Boyer's while Cleland entered the store; that Cleland exited the store with the safe and placed the safe in the back seat of the SUV; that the three returned to their home in Drums; that in the basement of the home Cleland and Whah used various tools to cut a hole in the bottom of the safe; that Conrad put her hand through the hole and withdrew approximately $13,000 in cash and checks from the safe; that the money was given to Cleland; and that Cleland subsequently hid the money in a location unknown to her.

Based on their own investigation, the information they first received from Conrad—before she acknowledged being part of the theft, and a conversation with a confidential informant who stated that he had been in the Whah residence and that Whah stored large amounts of drugs in his home, the police secured a search warrant from a local magistrate to search Whah's home for purposes of obtaining evidence related to the theft, as well as evidence of drug trafficking by Whah.[1] The search warrant

---

1. An earlier search warrant, obtained for Cleland's former residence in Kelayres, Pennsylvania, produced no evidence, Cleland having previously moved from that location. By agreement of the parties, defendants' motion to suppress any evidence gathered from the execution for this warrant, there being none, was granted without prejudice to any other pending motions to suppress.

was executed on March 6, 2003. No evidence of drugs or drug paraphernalia was found in the home and no evidence of the theft was found among Whah's property. (Preliminary hearing, pp. 37-38.) The police, however, did discover keys to Boyer's store in a black duffle bag located in the bedroom Cleland shared with Conrad; these keys were identified by a store manager as being kept in the safe that had been removed. Also located in Cleland's bedroom was an extra large gray hooded sweatshirt.

Both Cleland and Whah have been charged with identical crimes: burglary,[2] theft by unlawful taking,[3] theft by receiving stolen property,[4] criminal conspiracy,[5] and criminal trespass.[6] Both have also filed omnibus pretrial motions in the nature of a writ of habeas corpus with respect to the crimes of burglary and criminal trespass, claiming the necessary elements for each has not been met, and for the suppression of evidence, claiming that probable cause did not exist for the issuance of the search warrant and that the Rules of Criminal Procedure were not complied with.[7]

---

2. 18 Pa.C.S. §3502(a).

3. 18 Pa.C.S. §3921(a).

4. 18 Pa.C.S. §3925(a).

5. 18 Pa.C.S. §903(a).

6. 18 Pa.C.S. §3503(a)(1)(i).

7. Whah has also argued that because the crime he is alleged to have conspired to commit is restricted to that of burglary, and because there is no evidence that he entered Boyer's Supermarket or took any property from the building, the charges of criminal conspiracy and theft by unlawful taking must be dismissed. Whah's argument ignores the accomplice theory of liability. 18 Pa.C.S. §306(v). Failure to charge or even an acquittal of conspiracy, does not preclude the possibility of guilt as an accomplice.

"Rejection of a conspiracy theory does not eliminate the possibility of concerted action in the perpetration of a crime. A conspirator agrees with another to commit a crime and makes an overt act in furtherance

## DISCUSSION

### *Habeas Corpus*

Defendants argue that because Boyer's Supermarket was open to the public at the time the theft occurred, the statutory definitions of burglary and criminal trespass preclude a conviction of either. The Commonwealth retorts that Cleland's entry into the store by subterfuge both permits and justifies the charges. The answer, not surprisingly, lies in the language of the Crimes Code.

Burglary is defined in section 3502(a) of the Code as follows:

"Section 3502. Burglary

"(a) Offense defined.—A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." 18 Pa.C.S. §3502(a).

---

thereof. The inchoate crime of conspiracy is thus committed regardless of whether the substantive crime occurs. An accomplice knowingly or voluntarily cooperates with or aids another in the commission of a crime. *Commonwealth v. Manchas,* 430 Pa. Super. 63, 81, 633 A.2d 618, 627 (1993), *allocatur denied,* 539 Pa. 647, 651 A.2d 535 (1994). The aid rendered makes that person guilty of the substantive offense.

"Despite the similarities between conspiratorial culpability and accomplice liability, a jury verdict concluding that an individual is not a conspirator does not require a concomitant conclusion that the same individual is not an accomplice." *Commonwealth v. Tolbert,* 448 Pa. Super. 189, 214-15, 670 A.2d 1172, 1185 (1995), *appeal denied,* 548 Pa. 613, 693 A.2d 588 (1997), *cert. denied,* 522 U.S. 891, 118 S.Ct. 230, 139 L.Ed.2d 162 (1997); see also, *Commonwealth v. Allen,* 425 Pa. Super. 615, 618-19, 625 A.2d 1266, 1268 (1993).

The succeeding section of the Code, in language applicable to this case, defines criminal trespass in the following terms:

"Section 3503. Criminal trespass

"(a) Buildings and occupied structures.—

"(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

"(i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; . . . ." 18 Pa.C.S. §3503(a)(1)(i).

The same section of the Code, under subsection c, provides:

"(c) Defenses.—It is a defense to prosecution under this section that:

"(2) the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises; . . . ." 18 Pa.C.S. §3503(c).

Finally, the term "occupied structure" used in both section 3502 and section 3503 is defined as follows:

" 'Occupied structure.' Any structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present." 18 Pa.C.S. §3501.

At common law, burglary was the nighttime breaking and entering of the dwelling house of another with intent to commit a felony therein. According to the Superior Court, the reason for including the phrase "open to the public" in section 3502 of the Crimes Code was "to bring the law of burglary closer to its common-law ancestor which sought to protect private premises from

crime." *Commonwealth v. Cost,* 238 Pa. Super. 591, 601, 362 A.2d 1027, 1032 (1976). See also, *Commonwealth v. Hagan,* 539 Pa. 609, 615, 654 A.2d 541, 544 (1995) ("Under the common law, burglary was 'a forcible invasion of the right of habitation.' ").

Under section 3502, one who enters premises held open to the public or to which he is permitted to enter is not a burglar.[8] The burden is upon the Commonwealth to prove, as an element of the offense, that the premises were not open to the public at the time of entry, regardless of the actor's intent at the time he entered the premises. *Id.* at 599, 362 A.2d at 1031.

In this case, the Commonwealth has stipulated that Boyer's was open to the public at the time of entry. Therefore, regardless of any criminal intent Cleland may have harbored when he entered the front door, standing alone, Cleland's entry into the store, even if duplicitous as suggested by the Commonwealth, is insufficient to sustain a conviction of burglary.

---

8. Burglary, as defined by section 3502, requires proof of the following three elements beyond a reasonable doubt: (1) entry of a building or occupied structure, or separately secured or occupied portion thereof, by the defendant; (2) with the contemporaneous intent on the part of the defendant of committing a crime therein; and (3) at a time when the premises are not open to the public and the defendant was not then licensed or privileged to enter. *Commonwealth v. Franklin,* 306 Pa. Super. 422, 427, 452 A.2d 797, 799 (1982). The purpose of the burglary statute is "to protect the sanctity of the building and the safety of the persons and contents within it." *Commonwealth v. Giddings,* 454 Pa. Super. 524, 530, 686 A.2d 6, 9 (1996), *appeal denied,* 548 Pa. 643, 695 A.2d 784 (1997), *overruled on other grounds by Commonwealth v. Clark,* 746 A.2d 1128 (Pa. Super. 2000), *appeal denied,* 564 Pa. 700, 764 A.2d 1064 (2000). The purpose of the criminal trespass statute is "to prevent unlawful intrusion onto real property[.]" *Commonwealth v. White,* 342 Pa. Super. 1, 8, 492 A.2d 32, 36 (1985).

The more difficult question, one not answered by the court in *Cost,* is whether a thief's entry into a business place during business hours bars a prosecution for burglary when the theft occurs from within a partially enclosed area of the business premises where business customers are not permitted—here the manager's office. In *Cost,* the court expressly declined to decide whether the entry of defendant's accomplice into the area behind the tavern's bar and the taking of money from the cash register located behind this bar "could support a conviction of burglary on the grounds that there was an entry of a '. . . separately secured . . . portion . . . .' of the premises." *Commonwealth v. Cost,* 238 Pa. Super. at 599 n.5, 362 A.2d at 1031 n.5.

On this issue we believe that the manager's office—described as an open booth, with a swinging gate, and which bore no lock and required no breaking or forced entry for Cleland to pass through—was not separately secured. Cf. *Commonwealth v. Cook,* 377 Pa. Super. 356, 547 A.2d 406 (1988) (unauthorized entry by defendant into a store's stockroom, open only to employees and not to members of the public, the door to which had been closed and secured by an unlocked padlock, in which defendant was discovered carrying a bag containing concealed clothing from both the store and the stockroom, held sufficient to sustain conviction for criminal trespass of a separately secured portion of the building under section 3503(a)(1)(i)). At the same time, we also conclude that the area bounded by the manager's office was a separately occupied section of the store. As an area obviously reserved for and restricted to store employees, the booth was not an area held open to the public or to which Cleland was licensed or privileged to enter.

In explaining what is a separately secured or occupied portion of a building or occupied structure, the Superior Court has quoted with approval the following official commentary to section 221.1 of the Model Penal Code:

"The provision as to separately secured or occupied portions of buildings and structures takes care of the situation of apartment houses, office buildings, steamships with many private cabins, etc., where occupancy is by unit. It is the unit rather than the structure which must be safeguarded, even against the occupants of other units in the same structure." *Commonwealth v. White,* 371 Pa. Super. 578, 581-82, 538 A.2d 887, 889 (1988), *appeal denied,* 519 Pa. 660, 546 A.2d 622 (1988) (ladies' room of Society Hill Club entered by male intruder held to be a separately secured or occupied portion of the building within the meaning of section 3503(a)(1)(i)). In *White,* the court found the ladies' room of the Society Hill Club to be a "separately secured or occupied" portion of the building "for precisely the same reason that an office in an office building is— it is reserved for the exclusive use of only a subset of the total population authorized to use the larger structure." *Id.* at 582, 538 A.2d at 889.

That Boyer's Supermarket was opened for business and, in this sense, open to the public at the time Cleland allegedly entered, is not in dispute. That the manager's office at the front of the store was reserved for use by employees only and not open to the general public, appears clear from the evidence presented by the Commonwealth. Therefore, while Cleland's entry into the store itself will not sustain a conviction for either burglary or criminal trespass, his entry into the manager's office, if proven, will.[9]

9. Notwithstanding the similarity in language, criminal trespass is not a lesser included offense of burglary. *Commonwealth v. Carter,*

*Suppression*

Defendants next claim that the information upon which the magistrate relied in approving the issuance of a search warrant for Whah's home was tainted by illegally obtained information and, therefore, any evidence obtained when the warrant was executed must be suppressed as the fruit of an unlawful search. More broadly stated, defendants claim that if only properly obtained and reliable information is considered, the affidavit does not provide a substantial basis for the magistrate to make a probable cause determination.

Defendants first argue that the similarity of Cleland's general physical appearance and dress with that of the true thief, as described in the warrant's affidavit and which appears in the testimony of record, is only superficial and was insufficient to establish probable cause for Cleland's arrest. If defendants are correct, the cash seized incident to Cleland's arrest and his statement as to the source of this cash—the alleged sale of his truck which was discredited by further investigation—was illegally obtained evidence and improperly considered by

---

482 Pa. 274, 393 A.2d 660 (1978). The two are distinguished by the intention of the actor. Whether the defendant subjectively believed his presence in a building or occupied structure was privileged or licensed is irrelevant for burglary. The only question is whether the premises were in fact open to the public or whether the actor was licensed or privileged to enter. In contrast, since the defendant's subjective belief is an element of criminal trespass, the defendant's actual belief that he was privileged or licensed to enter can provide a basis for acquittal of this charge. *Id.* at 277, 393 A.2d at 661. Scienter is not an element of burglary. For purposes of sentencing, however, where the facts show that in practical effect the defendant committed a single criminal act, the two merge. *Commonwealth v. Franklin,* 306 Pa. Super. at 430, 452 A.2d at 801.

the magistrate in issuing the warrant. (Suppression hearing, pp. 38, 40.) We agree. *In the Interest of: M.D.,* 781 A.2d 192, 198 (Pa. Super. 2001) ("Clearly, blue jeans and a gray hooded sweatshirt is not unusual attire, and the officer did not even indicate whether his suspect possessed any specific physical or racial characteristics which would assist in separating possible suspects from ordinary, law-abiding citizens."). Such information must be suppressed under the fruit-of-the-poisonous-tree doctrine, the poisonous tree being the illegal arrest.[10]

Defendants also challenge, as a basis for issuing the warrant, the assertions in the affidavit that Whah was involved in drug trafficking. The affidavit states that the police spoke with a confidential informant who had provided information to other law enforcement agencies, which resulted in the issuance of a search warrant and the arrest of various individuals allegedly involved in the sale of illicit narcotics supplied by Whah, and that this same informant advised the undersigned affiant that Whah conceals large amounts of drugs in a false wall in the basement of his home. The affidavit does not state the circumstances or number of times or when most recently the confidential informant was in Whah's home and observed illicit drugs, and does not state any predictive behavior or corroborative evidence or any other in-

---

10. The fruit-of-the-poisonous-tree doctrine "requires the exclusion of tangible evidence seized during an unlawful search, and derivative evidence, both tangible and testimonial, acquired as a result of the unlawful search." *United States v. Herrold,* 962 F.2d 1131, 1137 (3d Cir. 1992), *cert. denied,* 506 U.S. 958, 113 S.Ct. 421, 121 L.Ed.2d 344 (1992). "[E]vidence which is obtained as a direct result of an illegal search and seizure may not be used to establish probable cause for a subsequent search." *United States v. Barajas-Avalos,* 359 F.3d 1204, 1212 (9th Cir. 2004).

formation from which the police or magistrate in this case could independently evaluate the credibility of the confidential informant, the reliability of his information that large amounts of drugs had been concealed in Whah's home, or the validity of the conclusion that evidence of drug trafficking was still present and was likely to be discovered in Whah's home. Such information as is contained in the affidavit, defendants argue, was insufficient to permit the magistrate to independently assess the "veracity" and "basis of knowledge" of the confidential informant and whether the information received by the affiant was probably reliable. With this, we also agree. Without being provided such underlying information, the magistrate could not determine whether there existed a fair probability that contraband or evidence of a crime would be found in Whah's home at the time of executing the warrant. *Commonwealth v. Conner,* 452 Pa. 333, 340, 305 A.2d 341, 345 (1973); *Commonwealth v. Haggerty,* 388 Pa. Super. 67, 564 A.2d 1269 (1989), *appeal denied,* 525 Pa. 577, 575 A.2d 109 (1990) ("The necessity to establish the time frame concerning which the search warrant is sought is to avoid staleness as a warrant can only issue upon probable cause that exists at the time of issuance." *Id.* at 71-72, 564 A.2d at 1271.). The bootstrapping of one search warrant upon the strength of another cannot be mechanically condoned.[11]

---

11. "In determining whether the warrant is supported by probable cause, the magistrate may not consider any evidence outside the four-corners of the affidavit." *Commonwealth v. Ryerson,* 817 A.2d 510, 513 (Pa. Super. 2003). Unless the magistrate is provided sufficient information to independently determine the reliability of the information contained in the affidavit and the reliability of the sources of that information, the information provided will be insufficient to establish probable cause and to meet the specificity test relating to time, place

Although we agree with defendants that Cleland's arrest, at the time made, was illegal, and that the magistrate's consideration in issuing the warrant of any evidence obtained from this arrest, as well as consideration of possible drug trafficking by Whah, was improper, we do not believe that such consideration requires suppression of any evidence seized pursuant to the warrant. Defendants' assumed premise, that the inclusion of illegally obtained evidence or evidence whose reliability is not established in a probable cause affidavit inextricably taints and precludes a finding of probable cause to support the issuance of a search warrant, is too broad.[12] Expanding the cost to society already imposed by the exclusionary rule on the prosecution of criminal activity is not warranted where probable cause is evident in the affidavit based on information legally obtained from independent sources.[13]

---

and alleged criminal activity required to be contained within the four corners of the affidavit. *Commonwealth v. Edmunds,* 526 Pa. 374, 403 n.12, 586 A.2d 887, 902 n.12 (1991) (the information presented to the magistrate must be in writing; oral statements of the affiant to a magistrate, even if under oath, may not be considered in determining whether probable cause has been established); see also, Pa.R.Crim.P. 203(B) ("The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside of the affidavits.").

12. "Where a search warrant authorizes seizure of some items for which there is probable cause and other items for which there is no probable cause, the warrant is not [fully] invalid. In such cases, suppression will be required only of the evidence which was seized without probable cause." *Commonwealth v. Bagley,* 408 Pa. Super. 188, 215-16, 596 A.2d 811, 824 (1991), *appeal denied,* 531 Pa. 637, 611 A.2d 710 (1992), *cert. denied,* 506 U.S. 1002, 113 S.Ct. 606, 121 L.Ed.2d 541 (1992).

13. The independent source doctrine is a corollary to the exclusionary rule.

"[T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a

When the affidavit contains a mixture of both lawfully and unlawfully obtained information, it is the responsibility of the court to independently review the affidavit and redact that which has been unlawfully obtained. If, in doing so, the information remaining establishes probable cause, the warrant should be upheld. *United States v. Barajas-Avalos,* 359 F.3d 1204, 1216 (9th Cir. 2004) ("A reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant."). "[T]he inclusion of illegally obtained evidence will not invalidate a search warrant if the warrant is also based upon other sources which are valid and sufficient to constitute probable cause." *Commonwealth v. Cosby,* 234 Pa. Super. 1, 5-6, 335 A.2d 531, 533 (1975) (quotation and citations omitted); see also, *United States v. Herrold,* 962 F.2d 1131, 1138 (3d Cir. 1992) ("[E]ven assuming that some factual averments in the affidavit are tainted, they do not vitiate a warrant which is otherwise validly issued upon probable cause reflected in the affidavit.").[14] The question we must there-

crime are properly balanced by putting the police in the same, not a worse position, that they would have been in if no police error or misconduct had occurred. . . . When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation." *United States v. Herrold,* 962 F.2d at 1139-40. (citations and quotations omitted)

14. The policy underlying the independent source doctrine is that the police not be placed in a worse position than they would have been in had they not engaged in illegal activity.

"To promote this interest, the court's use of 'affect' in *Murray [Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988)] must be understood to signify affect in a *substantive* manner. Thus, the fact that an application for a warrant contains information obtained through an unlawful entry does not *per force* indicate

fore answer is whether, after redacting evidence derived from Cleland's arrest and excising those averments in the affidavit alleging drug trafficking by Whah, the affidavit nonetheless establishes probable cause to support the warrant.

"The starting point in determining whether a search and seizure conducted pursuant to a search warrant was unreasonable is to question whether probable cause existed to issue the search warrant." *Commonwealth v. Clark,* 412 Pa. Super. 92, 95, 602 A.2d 1323, 1325 (1992), *appeal denied,* 533 Pa. 606, 618 A.2d 398 (1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1846, 123 L.Ed.2d 470 (1993). Probable cause exists when the information presented, reviewed in a practical, non-technical manner, supports a fair probability that contraband or evidence of a crime will be found in a particular place. Such a

---

that the improper information 'affected' the justice's decision to issue the warrant and thereby vitiate the applicability of the independent source doctrine. Rather, if the application contains probable cause apart from the improper information, then the warrant is lawful and the independent source doctrine applies, providing that the officers were not prompted to obtain the warrant by what they observed during the initial entry." *United States v. Herrold,* 962 F.2d at 1141-42.

In this opinion, the court later concluded:

"Hence, we are satisfied that the district court focused on the wrong question when it held '[t]he government has not presented any evidence proving by a preponderance of the evidence that the Magistrate's decision to grant the search warrant was entirely independent of the information discovered during the illegal warrantless entry.' The government was not required to make such a showing which probably could have been made only by producing the justice as a witness so that he could be asked to reconstruct his state of mind when he issued the warrant. Rather, the government was required to establish that a neutral justice would have issued a warrant based on the untainted information in the affidavit which the police had acquired prior to their entry into [defendant's] trailer." *Id.* at 1143.

probability must be "supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir. 1990). It requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 244 n.13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

"The legal principles applicable to a review of the sufficiency of probable cause affidavits are well settled. Before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. The standard for evaluating a search warrant is a 'totality of the circumstances' test as set forth in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and adopted in *Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1985). A magistrate is to make a 'practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' The information offered to establish probable cause must be viewed in a commonsense, non-technical manner. Probable cause is based on a finding of the probability, not a prima facie showing of criminal activity, and deference is to be accorded a magistrate's finding of probable cause." *Commonwealth v. Ryerson,* 817 A.2d 510, 513-14 (Pa. Super. 2003). The role of the reviewing court in determining whether probable cause exists to issue a search warrant is limited to "ensur[ing] that the magistrate had a 'substantial basis for . . .

conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates,* 462 U.S. at 238-39, 103 S.Ct. at 2332; *Commonwealth v. Bonasorte,* 337 Pa. Super. 332, 346, 486 A.2d 1361, 1369 (1984).[15]

When the challenged information is severed from consideration, the affidavit nonetheless established probable cause to believe that evidence or the fruits of the theft

---

15. In attacking the validity of a search warrant at a suppression hearing, a defendant is entitled to go beyond the four corners of the search warrant and attack deliberate and material misstatements by the affiant. *Commonwealth v. Hall,* 451 Pa. 201, 302 A.2d 342 (1973). The reliability and credibility of the affiant, including the truthfulness of the recitals in the warrant alleging the informant's previous reliability, are important factors to consider in determining whether the issuing magistrate's substantial basis finding should be upheld. "Where a police officer makes a knowing misstatement of material fact in [an affidavit in support of an application for] a search warrant, the warrant is invalid and any evidence obtained pursuant to that warrant is inadmissible." *Commonwealth v. Bonasorte,* 337 Pa. Super. 332, 346-47, 486 A.2d 1361, 1369 (1984).

The information provided by Conrad tying defendants to the crime is substantial. It is also, according to defendants, unreliable. This, defendants claim, is illustrated by Conrad's change in story: the basis of her knowledge shifting from that of an observer to that based on her actual involvement and participation in the theft. This change, coupled with factual inconsistencies, defendants contend, brands Conrad inherently suspect as a source of information and renders the information provided by her incapable of reasonably supporting a legitimate claim of probable cause. With this view, we disagree.

"Misstatements of fact [by an affiant] will invalidate a search and require suppression only if they are deliberate and material." *Commonwealth v. Bonasorte,* 337 Pa. Super. at 347, 486 A.2d at 1369. "A material fact is one without which probable cause [for] search would not exist." *Commonwealth v. Clark,* 412 Pa. Super. 92, 96, 602 A.2d 1323, 1326 (1992). "In deciding whether a misstatement is material, the test is not whether the statement strengthens the application for the search warrant, but rather whether it is essential to it." *Commonwealth v. Cameron,* 445 Pa. Super. 165, 171, 664 A.2d 1364, 1367 (1995), *appeal denied,* 544 Pa. 622, 675 A.2d 1242 (1996).

would be located at Whah's home. See also, *Commonwealth v. Torres,* 564 Pa. 86, 96, 97, 764 A.2d 532, 538 (2001) (reviewing court must accord deference to the issuing authority's probable cause determination). After reciting the officer's experience and familiarity with in-

---

As an identified informant, Conrad's shift in the basis of her knowledge from that of an observer to that of an accomplice, thereby subjecting herself to criminal responsibility, strengthens, not lessens, her veracity. *Commonwealth v. Matthews,* 446 Pa. 65, 70, 285 A.2d 510, 512 (1971) (reliability of identified informant established by declaration against penal interest). More importantly, this change does not constitute a deliberate or knowing misstatement of material fact: under either version, the time, place and defendants' involvement in the criminal activity with which they've been charged has remained the same.

Additionally, to the extent defendants challenge the truthfulness of the facts recited in the affidavit, defendants' challenge is to that of the veracity of the informant—Conrad—not that of the police officer affiant. Defendants correctly cite *Commonwealth v. Clark, supra,* as authority to support this challenge. *Clark,* however, is at odds with an earlier panel decision of the Superior Court holding that under both the federal and state constitutions a challenge to the information presented in a probable cause affidavit is restricted to a challenge to the veracity of the affiant. *Commonwealth v. Bradshaw,* 290 Pa. Super. 162, 434 A.2d 181 (1981) (credibility of affiant, not informant, is issue of probable cause hearing). With this statement we agree.

A defendant is entitled—constitutionally, legally and historically—not to have his privacy invaded unreasonably by governmental agents in order to enforce the law. The vehicle to assure this protection is afforded is the standard of probable cause presented objectively, accurately and truthfully by the affiant and reviewed objectively, practically and fairly by a neutral and detached magistrate. The test of probable cause "is designed to protect us from unwarranted and even vindictive incursions upon our privacy." *Commonwealth v. Edmunds,* 526 Pa. at 398, 586 A.2d at 899 (quoting *Commonwealth v. Miller,* 513 Pa. 118, 127, 518 A.2d 1187, 1191 (1986)).

In *Edmunds,* the court upheld defendant's challenge to a warrant which on its face failed to meet the test of probable cause: the warrant failed to support a time frame within which the magistrate could rea-

vestigating criminal activity, the affidavit sets forth the results of the officer's immediate investigation of the scene: his review of the security tape and its depiction of the intruder, the reasons why the officer believes the intruder was familiar with the store and the safe, the officer's view-

---

sonably infer that the criminal conduct observed was recent and would most likely still be in progress at the time the warrant was requested. The court held, unlike the "good faith" exception to the exclusionary rule found by the United States Supreme Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), that the history and policy underlying Article I, Section 8 of the Pennsylvania Constitution precludes the introduction of evidence seized where probable cause is lacking on the face of the warrant.

Neither the holding nor reasoning of *Edmunds* suggest that when probable cause appears on the face of the warrant and it is later determined that an informant, who the police legitimately and reasonably believed and found reliable, deliberately and knowingly provided misstatements of material fact, that the search and consequent invasion of privacy is constitutionally unsound and such as to require the suppression of evidence seized pursuant to the warrant. To invalidate the fruits of state action which reasonably, in good faith and in accordance with the law relies on information provided by a private party—later determined to be inaccurate—represents a fundamental and dramatic shift in what evidence must be suppressed and one which we believe should only be made by an express and unmistakable pronouncement of our Supreme Court. See *Commonwealth v. Kean,* 382 Pa. Super. 587, 596, 556 A.2d 374, 378 (1989), *appeal denied,* 525 Pa. 596, 575 A.2d 563 (1990) ("[B]oth state and federal constitutional limitations on 'unreasonable searches and seizures' apply exclusively to the conduct of persons who are acting as instruments or agents of the state."). If, then, the police have a reasonable belief in the truthfulness of the information provided by the informant, and such information is factually sufficient to establish probable cause, the protections against unreasonable searches and seizures provided by both the Fourth Amendment and Article I, Section 8, of the Pennsylvania Constitution are not violated. In this respect we agree with the holding in *Bradshaw* and disagree with that in *Clark.* Parenthetically, we also note that *Bradshaw* was cited with approval by the Superior Court, en banc, in *Bonasorte,* 337 Pa. Super. at 339 n.4, 486 A.2d at 1365 n.4.

ing of a separate tape made several days prior to the theft in which Cleland is depicted with his girlfriend, Conrad, an employee of Boyer's with knowledge of the store's operation and use of the safe, and in which Cleland's physical traits and dress and movements, as observed by the officer, strongly resemble those of the intruder. The affiant recites the statements obtained from Conrad in which she allegedly heard the defendants discussing their plans to rob Boyer's; that she saw the defendants leave Whah's home on February 25, 2002, at approximately 2:45 a.m. and return at approximately 5 a.m.; that Cleland's dress at the time of departure matched that of the intruder depicted on the security tape; and that the same morning she heard Whah tell Cleland that some of the money would be in Whah's bedroom. The affiant also reported that later, Cleland, who was unemployed, gave Conrad $200 in cash; that Cleland had been staying with Whah at Whah's home for the past four months; and that Conrad provided information where, within the home, the tools used to open the safe were located and where, she believed, the safe was discarded.[16]

See also, *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667, 682 (1978), in which the Supreme Court, in dicta, stated that "[t]he deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." "In *Franks,* it was held that a court must invalidate the warrant and suppress the fruits of the search if the criminal defendant can prove that the *affiant* made deliberate misstatements or made statements with reckless disregard for the truth and these statements were necessary to the finding of probable cause." *Commonwealth v. Bradshaw, supra,* 290 Pa. Super. at 165, 434 A.2d at 182. (emphasis in original)

16. Defendants also argue that chapter 2 of the Rules of Criminal Procedure has been violated, specifically Rules 208 and 209, by the failure of the police while executing the warrant to properly sign, witness or prepare an inventory and provide a copy to the issuing magis-

## CONCLUSION

In accordance with the foregoing, the charges of burglary and criminal trespass will remain. Defendants' motion to suppress the information obtained from the

---

trate, and that this violation requires the suppression of any evidence obtained pursuant to the warrant. The "exclusion/suppression of evidence is not an appropriate remedy for every violation of the Pennsylvania Rules of Criminal Procedure concerning seaches and seizures. It is only where the violation also implicates fundamental, constitutional concerns, is conducted in bad-faith or has substantially prejudiced the defendant that exclusion *may* be an appropriate remedy." *Commonwealth v. Mason,* 507 Pa. 396, 406-407, 490 A.2d 421, 426 (1985). (emphasis in original) In *Mason,* our Supreme Court, quoting *Commonwealth v. Musi,* 486 Pa. 102, 115-16, 404 A.2d 378, 385 (1979), stated:

"A rule of exclusion is properly employed where the objection goes to the question of the reliability of the challenged evidence . . . or reflects intolerable government conduct which is widespread and cannot otherwise be controlled. . . . Experience does not suggest there has been such a widespread and flagrant abuse of Rule 2008(a) [now Rule 208] that would require the fashioning of a per se exclusionary rule for its violation. . . . Therefore, the imposition of a sanction requiring the exclusion of evidence that results from a search where there has not been compliance with the rule must depend upon the relationship of the violation to the reliability of the evidence seized. Here, there was probable cause for the entry and search and there is no dispute that the rifle was in fact found on the premises described in the warrant and seized pursuant to that search. Thus, appellant's rights were not prejudiced by the officer's failure to fully comply with the mandates of the rule.

"Federal cases interpreting a comparable rule of criminal procedure, see Rule 41(d) of the Federal Rules of Criminal Procedure, have concluded that although important, the procedures required for execution and return of the warrant are ministerial and that irregularities should not void an otherwise valid search absent a showing of prejudice. . . . We accept the wisdom of this approach and hold that where, as here, appellant has failed to demonstrate that she was prejudiced from the violation of this rule a request to suppress the fruits of the search is not justified." *Id.* at 403-404, 490 A.2d at 424-25. (internal

search authorized by the warrant will be denied. However, defendants' motion to suppress the information obtained from the search of Cleland incident to his arrest will be sustained.

## ORDER

And now, April 29, 2004, upon consideration of the respective defendants' omnibus pretrial motions and after hearing thereon and following review of the parties' respective briefs, it is hereby ordered and decreed as follows:

(1) By agreement of the parties, the motion to suppress the results of the search of the residence at 38 Third Street, Kelayres, Schuylkill County, Pennsylvania, pursuant to the warrant bearing warrant control number 010-03, is granted without prejudice to the parties on any other pending motions to suppress.

(2) The motion to suppress the monies discovered on the person of John Cleland and his statement regarding the source of these monies following his arrest on February 27, 2003, is granted.

(3) The remaining motions of both defendants are denied.

---

citations and emphasis omitted) See also, *Commonwealth v. DeGeorge,* 319 Pa. Super. 244, 466 A.2d 140 (1983), *rev'd on other grounds,* 506 Pa. 445, 485 A.2d 1089 (1984) (violation of former Rule 2009(a), now Rule 209(a), requiring return of an inventory of the items seized, does not require exclusion of evidence).

As stated in *Commonwealth v. Ryan,* "[t]he failure to file the inventory with the clerk of courts office did not violate any of defendant's constitutional rights, did not invalidate the search warrant, nor did it affect its execution." 268 Pa. Super. 259, 263, 407 A.2d 1345, 1347 (1979).