J-S53009-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID MATHIAS | : | |
| | : | |
| Appellant | : | No. 1934 EDA 2019 |

Appeal from the PCRA Order Entered June 11, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0808071-2005

BEFORE: SHOGAN, J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SHOGAN, J.: **FILED: APRIL 12, 2021**

Appellant, David Mathias, appeals from the order dismissing, without a hearing, his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm.

We set forth the facts of the crime and procedural history in a prior decision. We reproduce it here because we had noted that the facts delineated by the trial court originally, and adopted by this Court on direct appeal, were at odds with both the Commonwealth and Appellant's recitations of the facts therein. We clarified as follows:

> At approximately 12:45 a.m. on May 23, 2005, Appellant and his codefendant, Richard Jarmon, went to a boarding house where Eric Richardson resided. Mr. Richardson's friend, Joseph Drew El, was staying with Mr. Richardson and was occupying a room that Mr. Richardson's father rented. Appellant knocked on

_____

[*] Retired Senior Judge assigned to the Superior Court.

the door of Mr. Richardson's room. Mr. Richardson and his girlfriend were in bed at the time and he asked who was at the door. Appellant responded, "Buck," which is his nickname. Both Appellant and Mr. Richardson were familiar with one another.[2] Mr. Richardson then opened the door and stepped outside, closing the door behind him. Appellant asked for change for a five-dollar bill.

> [2] Appellant and several defense witnesses testified that Mr. Richardson sold marijuana[,] and Appellant maintained that was how he knew Mr. Richardson and was the reason he traveled to his building that night. Mr. Richardson testified that he is a licensed vendor and sold items to Appellant on a number of occasions.

At the time, Mr. Jarmon was seated in the neighboring room where Joseph Drew El reclined on the floor watching television. Mr. Richardson returned to his room and retrieved five one-dollar bills before again exiting his room and closing the door. After Mr. Richardson handed the money to Appellant, Appellant stated to Mr. Jarmon, "Are you ready?" N.T., 7/21/06, at 52. Appellant and Mr. Jarmon then proceeded to pull firearms from their waistbands. Mr. Jarmon shot Mr. El three times, causing his death, before turning his firearm toward Mr. Richardson. When Appellant removed his firearm, he aimed it at Mr. Richardson's stomach. Mr. Richardson grabbed Appellant's arm[,] and Appellant fired multiple shots.[3] Mr. Richardson was shot five times, but managed to flee the building and flag down police. Police discerned that both a nine-millimeter and .45 caliber handgun were used during the attack.

> [3] The trial court stated that Appellant shot at Joseph Drew El before firing at Mr. Richardson. However, Mr. Richardson did not testify to this effect, *see* N.T., 7/21/06, at 53-63, and the Commonwealth specifically argued during its opening and closing statements that Appellant shot Mr. Richardson[,] and Mr. Jarmon killed Mr. El. N.T., 7/20/06, at 146-148; N.T., 7/28/06, at 65. One Commonwealth witness, Appellant's former cell-mate, did testify that Appellant told him that Mr. Richardson was mistaken and that Appellant had shot and killed Mr. El[,] and Mr. Jarmon shot at Mr. Richardson. *See* N.T.,7/24/06, at 110-112, 137-138, 158-159. The Commonwealth contended that Appellant was merely puffing himself

up while he was incarcerated and it did not argue that Appellant was Mr. El's shooter. N.T., 7/28/06, at 65. In this appeal, the Commonwealth concedes that Richard Jarmon shot and killed Mr. El. Commonwealth's brief at 2.

Police found Appellant in the apartment of a female companion several weeks later, hiding in bed underneath the sheets. Located next to Appellant on the bed was a magazine for a nine-millimeter handgun. Appellant was charged with murder, conspiracy to commit murder, attempted murder, aggravated assault, possession of an instrument of crime ("PIC"), and various firearms violations.[4] At the close of the evidence, the court instructed the jury that it could find Appellant guilty of first degree murder, second degree murder, and third degree murder as either a principal or an accomplice. It did not instruct the jury, relative to murder, that it could find him guilty based on conspiracy liability. It also instructed the jury on conspiracy to commit first degree murder, aggravated assault, PIC, and the firearms violations. The jury found Appellant guilty of first degree murder, conspiracy to commit first degree murder, aggravated assault, PIC and the firearms charges. The court thereafter sentenced Appellant to life imprisonment for the first degree murder conviction and concurrent terms of incarceration on the remaining charges.

[4] The Commonwealth did not proceed with the attempted murder charge at trial.

Appellant filed a direct appeal where he challenged the trial court's instruction on conspiracy to commit first degree murder and the sufficiency of the evidence as to each charge. As to the first issue, Appellant's counsel failed to cite any case law in his brief, and this Court found the issue waived. Importantly, however, this Court addressed the merits of that issue in the alternative and concluded that it lacked merit. We noted that the trial court instructed the jury that to convict Appellant for conspiracy to commit first degree murder, it was required to find that Appellant had the specific intent to kill. Appellant also asserted challenges to jury instructions related to aggravated assault and VUFA violations, which this Court found waived. With respect to Appellant's sufficiency claim, this Court held the issue

waived for lack of adequate development and did not discuss the merits of the challenge.[1]

Thereafter, Appellant filed a timely *pro se* PCRA petition[,] and the court appointed counsel. Appellant's counsel filed a **Turner/Finley**[2] no-merit letter addressing the issues Appellant set forth in his *pro se* petition.

\* \* \*

The court thereafter dismissed Appellant's PCRA petition and granted counsel's petition to withdraw.

**Commonwealth v. Mathias**, 62 A.3d 464, 2297 EDA 2011 (Pa. Super. filed October 25, 2012) (unpublished memorandum at 1–4, 7) (some footnotes omitted). Appellant, *pro se*, filed a notice of appeal to this Court. We affirmed the denial of PCRA relief. **Id.**

Appellant filed his second PCRA petition, *pro se*, on March 11, 2013.[3] Appointed counsel eventually sought to withdraw. The PCRA court issued notice pursuant to Pa.R.Crim.P. 907 on December 8, 2015. Counsel was

---

[1] **Commonwealth v. Mathias**, 974 A.2d 1187, 3040 EDA 2006 (Pa. Super. filed April 23, 2009) (unpublished memorandum), wherein we affirmed the judgment of sentence. Appellant did not file a petition for allowance of appeal to the Pennsylvania Supreme Court.

[2] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[3] Meanwhile, Appellant, *pro se*, sought federal *habeas-corpus* relief on April 8, 2013. After rulings by a federal magistrate, the federal district court, and the Third Circuit Court of Appeals, and their concomitant appeals, federal *habeas corpus* relief was denied. **Mathias v. Superintendent Frackville SCI**, 876 F.3d 462 (3d Cir. filed November 20, 2017), *cert denied*, ___ U.S. ___, 138 S.Ct. 1707 (April 30, 2018).

permitted to withdraw, and on February 17, 2016, the PCRA court dismissed Appellant's PCRA petition. Order, 2/17/16. Appellant did not appeal.

Appellant, *pro se*, filed the instant PCRA petition, his third, on November 14, 2017. The PCRA court appointed counsel, who filed an amended petition on July 10, 2018. The PCRA court filed notice pursuant to Pa.R.Crim.P. 907 on May 9, 2019. PCRA counsel filed a response to the notice on May 10, 2019. On June 11, 2019, the PCRA court dismissed the petition, determining that Appellant's petition was untimely and no exception to the PCRA time-bar applied. Order, 6/11/19.

Appellant filed a counseled notice of appeal to this Court. The PCRA court did not direct the filing of a Pa.R.A.P. 1925(b) statement. The PCRA court filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issue on appeal:

> Did the lower court err and abuse its discretion by denying a hearing and relief, where Appellant proffered material facts demonstrating a *Brady*[4] violation that undermined the credibility and testimony of a critical Commonwealth eyewitness, in violation of Appellant's right to due process under the Pennsylvania and United States Constitutions.

Appellant's Brief at 2.

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." ***Commonwealth v. Stultz***, 114 A.3d 865, 872 (Pa. Super.

---

4 ***Brady v. Maryland***, 373 U.S. 83 (1963).

2015) (quoting ***Commonwealth v. Henkel***, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. ***Commonwealth v. Rykard***, 55 A.3d 1177, 1183 (Pa. Super. 2012). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. ***Commonwealth v. Rigg***, 84 A.3d 1080, 1084 (Pa. Super. 2014).

We initially must determine whether Appellant has filed a timely petition. A PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final[.]" 42 Pa.C.S. § 9545(b)(1). A judgment of sentence becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." ***Id.*** at § 9545(b)(3).

Beyond the one-year time-bar, a petitioner must plead and prove at least one of the time-bar exceptions. These exceptions include:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)–(iii). A petitioner must raise the claim within sixty days from the date that the claim could have been raised. *Id.* at § 9545(b)(2).[5]

In the case *sub judice*, Appellant was sentenced on September 18, 2006. As noted, this Court affirmed the judgment of sentence on April 23, 2009; Appellant did not file a petition for allowance of appeal with the Pennsylvania Supreme Court. Thus, his judgment of sentence became final on Tuesday, May 26, 2009.[6] 42 Pa.C.S. § 9545(b)(3). Pursuant to 42 Pa.C.S. § 9545(b)(1) and (3), Appellant had one year within which to file a PCRA petition, *i.e.*, no later than May 26, 2010. Appellant's instant petition, filed on November 14,

---

[5] Section 9545(b)(2) was amended to reflect that a petitioner has one year rather than the prior deadline of sixty days to raise his claim. This amendment became effective on December 24, 2018, and applies to claims arising on December 24, 2017, or after. Appellant's *pro se* PCRA petition was filed on November 14, 2017, before the amendment became effective. Additionally, Appellant's alleged claim arose on September 14, 2017, the date Craig Lindsey filed a PCRA petition alleging that Detective Wilkins visited Lindsey in custody on October 19, 2005, discussed *infra*. **See** PCRA Petition, 11/14/17, at 12. Therefore, the amendment is inapplicable.

[6] While the thirty-day period to file a petition for allowance of appeal to the Pennsylvania Supreme Court expired on May 23, 2009, that day was a Saturday, and the following Monday, May 25, 2009, was a holiday, Memorial Day. Thus, the relevant date for the finality of the judgment of sentence is May 26, 2009. 1 Pa.C.S. § 1908 (whenever the last day of any time period referred to in a statute falls on a Saturday, Sunday, or legal holiday, we omit that day from the computation).

2017, is patently untimely. **See** 42 Pa.C.S. § 9545(b)(1); ***Commonwealth v. Gamboa–Taylor***, 753 A.2d 780, 783 (Pa. 2000) (holding a PCRA petition filed more than one year after judgment of sentence becomes final is untimely, and the PCRA court lacks jurisdiction to address the petition unless the petitioner pleads and proves a statutory exception to the PCRA time-bar). We thus turn to whether Appellant has pled and proven that one or more of the exceptions to the PCRA's timeliness requisites applies.

Appellant contends that he was unable to comply with the PCRA's timeliness requirement because the Commonwealth withheld information from him in violation of ***Brady***, 373 U.S. 83. In order to establish a ***Brady*** violation, our Supreme Court has stated:

> [A] defendant must show that: (1) evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence was favorable to the defendant, either because it was exculpatory or because it could have been used for impeachment; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant. *See Commonwealth v. Lambert*, 584 Pa. 461, 471, 884 A.2d 848, 854 (2005); *Commonwealth v. Collins*, 585 Pa. 45, 68, 888 A.2d 564, 577–78 (2005). However, "the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." *Commonwealth v. Chambers*, 570 Pa. 3, 29, 807 A.2d 872, 887 (2002) (citation omitted and emphasis added). Rather, evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 29, 807 A.2d at 887–88.

***Commonwealth v. Willis***, 46 A.3d 648, 656 (Pa. 2012) (internal citation omitted). Moreover, the burden rests with the defendant to "prove, by

reference to the record, that evidence was withheld or suppressed by the prosecution." ***Commonwealth v. Paddy***, 15 A.3d 431, 451 (Pa. 2011). The withheld evidence must have been in the "exclusive control of the prosecution at the time of trial." ***Commonwealth v. Haskins***, 60 A.3d 538, 547 (Pa. Super. 2012).

We rely on the PCRA court's explanation in affirming this case, as follows:

> [Appellant] claims the instant petition is timely because it satisfies the newly–discovered evidence exception to the time-bar. See 42 Pa.C.S.A. § 9545(b)(1)(ii). The alleged newly-discovered evidence is the details surrounding favorable treatment given to the Commonwealth's key witness, Craig Lindsey. According to [Appellant], Lindsey testified that he was working as an informant to federal authorities in order to receive a lesser sentence in an unrelated federal case, but it was not disclosed that he was also providing information to state police and DEA agents. Lindsey testified that he had not yet begun to provide information to federal authorities, but he had in fact been doing so since his arrest on September 1, 2005; and although Lindsey testified that no promises had been made to him in exchange for his cooperation, he had received a promise of protection.
>
> "To obtain relief based upon newly[] discovered evidence under the PCRA, Appellant must establish that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." Commonwealth v. Washington, 592 Pa. 698 (2007) (internal citations omitted). In the instant matter, [Appellant] is not entitled to relief because the alleged newly-discovered evidence is being used solely to impeach Lindsey's testimony against [Appellant]. Specifically, the details surrounding Lindsey's cooperation are being used to impeach Lindsey's honesty and motive. Thus, relief is not warranted pursuant to the newly-

discovered evidence exception to the PCRA time-bar and this [c]ourt's dismissal of [Appellant's] claim was proper.

Furthermore, no actual <u>Brady</u> violation occurred. [Appellant] claims to have been denied his Constitutional right to due process because the Commonwealth failed to disclose the details surrounding Lindsey's cooperation, but this contention lacks merit. When reviewing an alleged <u>Brady</u> violation in the PCRA context, a defendant must establish that the alleged <u>Brady</u> violation "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." <u>Commonwealth v. Haskins</u>, 60 A.3d 538 (Pa. Super. 2012). . . . In the instant case, [Appellant] is not entitled to relief because no <u>Brady</u> violation occurred. The Commonwealth fully disclosed the fact that Lindsey was working as an informant and that he was hoping to receive a lesser sentence in an unrelated federal matter, if convicted, in exchange for his testimony against [Appellant]. At [Appellant's] trial, Lindsey testified as follows:

COMMONWEALTH: The open case you have in Federal Court, did you sign an agreement with federal authorities to cooperate with them?

LINDSEY: Yes.

COMMONWEALTH: To give them information about any criminal activity that you know about?

LINDSEY: Yes.

\* \* \*

COMMONWEALTH: How much time do you believe you are facing?

LINDSEY: 15 years.

COMMONWEALTH: What is your purpose in cooperating with federal authorities? What are you trying to achieve?

LINDSEY: Lesser time.

- 10 -

(N.O.T. 7/24/2006, Pages 106-107).[7]

> Moreover, the alleged newly-discovered evidence—namely, evidence that Lindsey also provided information to state police and DEA agents, began working as federal informant in 2005, and received a promise for protection[—]is not favorable to [Appellant] because it is neither exculpatory to [Appellant's] case nor does it provide a basis for further impeachment of Lindsey, as required by Paddy. Evidence that Lindsey had been providing information to federal authorities since 2005 and also provided information to state police and DEA agents likely makes him a more credible source since he has assisted other agencies. Furthermore, evidence that Lindsey may have received a "promise of protection" does not specifically impact upon his honesty or motives[,] as this does not impact Lindsey's sentence and Pennsylvania courts have deemed it "necessary to protect the flow of information from informants as well as to insure the safety of informants." Commonwealth v. Bonasorte, 337 Pa. Super. 332, 352, 486 A.2d 1361, 1372 (1984). Thus, no Brady violation occurred because the Commonwealth fully disclosed the fact that Lindsey was working as an informant and was hoping to receive a lesser sentence in exchange for his testimony against [Appellant]. Furthermore, the details surrounding Lindsey's cooperation were not exculpatory or favorable to [Appellant], as required by Paddy. As such, this [c]ourt's dismissal of [Appellant's] claim for lack of merit was proper.

PCRA Court Opinion, 12/19/19, at 5–7.

---

[7] We note that the record certified to us on appeal lacks any notes of testimony. It is well settled that "this Court may consider only the facts that have been duly certified in the record when deciding an appeal." **Commonwealth v. Kennedy**, 151 A.3d 1117, 1127 (Pa. Super. 2016) (citation omitted). "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." **Commonwealth v. Holston**, 211 A.3d 1264, 1276 (Pa. Super. 2019) (*en banc*). While we could find the issue waived, **id.**; **Kennedy**, 151 A.3d at 1127, instead, we rely upon the explanation of the PCRA court, which did review the notes of testimony. In light of the state of the record, more than this we cannot do.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/21